## I. BAUM v. W. M. McAFEE ET AL.

### Decided January 29, 1910.

**1.—Appeal—Transcript—Unnecessary Papers.**

Abandoned pleadings as such form no part of the pleadings necessary or proper to be incorporated in the transcript on appeal, and the appellant may be charged with the cost of incorporating them. And so of improper bills of exception and cross assignments of error.

**2.—Bill of Exception by Bystanders—Statute.**

Under the provisions of articles 1360, 1366, 1367, 1368 and 1369, Rev. Stats., only the party excepting to the ruling of the court and dissatisfied with the bill of exception which the trial judge is willing to give, may resort to a bill of exceptions by bystanders. It was not intended that the party in whose favor the ruling was made should prove up a bill of exception reflecting his version of what occurred and the court's ruling thereon. Nor does the fact that the judge failed or refused to submit to the adverse party the bill prepared by the party taking it, authorize such procedure.

**3.—Appeal—Transcript—Cross Assignments.**

Neither the statute nor the rules contemplate that cross assignments of error should be incorporated in the transcript on appeal.

**4.—Land Agent—Express Contract—Pleading.**

Pleading and evidence considered, and held to be based upon and to show an express contract to pay a certain commission for the sale of land.

**5.—Joint Obligation—Several Liability.**

Where two or more men make a joint promise, each is liable to the promisee for the whole debt or liability. This is true in a joint obligation as well as in a joint and several obligation.

**6.—Same—Cases Distinguished.**

Speake v. White, 14 Texas, 365, and Willis v. Morrison, 44 Texas, 27, distinguished.

**7.—Appeal—Assignment of Error.**

An assignment of error based upon two different statements made by counsel in his argument to the jury, and involving the decision of two separate and distinct questions, is not in accordance with the rules regulating the briefing of cases on appeal and is therefore not entitled to consideration.

Appeal from the County Court of Navarro County. Tried below before Hon. C. L. Jester.

*R. S. Neblett* and *H. L. Stone,* for appellant.

*Richard Mays,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee W. M. McAfee instituted this suit against the appellant, I. Baum, and the appellee J. E. Whiteselle, for compensation for services rendered in selling a tract of land for the said Baum and Whiteselle, which was owned by them jointly, consisting of 3,806 acres. The land was sold for $19,030, and McAfee claimed a commission of five percent for selling, amounting to $951.50, for which he sued. He filed three petitions in the case, styled, respectively, "Plaintiff's original petition," "Plaintiff's amended petition," and "Plaintiff's first amended original petition." The case went to trial on the last named petition, which alleges that plaintiff was a real estate agent, and that, acting under a contract made between him and the defendants, he sold for defendants the 3,806 acres of land for the sum stated; that under the terms of his contract with defendants he was entitled to a one-third interest in the profits of said sale, which aggregated $3,806, he having bought the land for them at $4 per acre and sold it for $5 per acre. That, notwithstanding said contract, defendants refused to carry it out, and declined to pay plaintiff said one-third of said profits; that it was finally agreed between plaintiff and defendant Baum, who acted in behalf of himself and of his codefendant Whiteselle, that plaintiff was to have said sum of $951.50, which was to be immediately paid, but that defendants have failed and refused to pay the same. The petition concluded with a prayer for the said sum of $951.50, with interest thereon from January 1, 1907, at the rate of six percent per annum, for costs of suit and general and special relief.

For answer defendants jointly plead, first, that plaintiff agreed to handle the double transaction—buying and selling—for ten cents an acre, and that they had paid him in full; second, if their construction of the contract between them and plaintiff as to his compensation was erroneous, and if he was entitled to ten cents an acre for buying and ten cents an acre for selling, then they tendered same into court, as they had tendered it to plaintiff before the bringing of the suit in order to avoid any controversy, as they recognized the fact that plaintiff's expression that "he would handle the transaction for ten cents an acre" could be construed and understood to mean ten cents an acre for buying and ten cents an acre for selling, and this additional ten cents, which they had tendered him before the suit was brought, and then tendered into court, was the utmost that could possibly be due

under the contract. Defendants denied absolutely the existence at any time of a contract by which they were to pay plaintiff one-third of the profits on the sale of the land. They likewise denied any subsequent agreement, in lieu of such a contract, to pay plaintiff five per cent commission. The trial resulted in a verdict and judgment in favor of plaintiff against defendant Baum for the full amount sued for, and in defendant Whiteselle's favor that the plaintiff recover nothing as to him. Baum filed a motion for new trial, which, being overruled, he excepted and perfected an appeal to this court.

Prior to the submission of the case on its merits, appellant filed an application addressed to this court, praying in the alternative for the issuance of a writ of mandamus requiring the clerk of the County Court of Navarro County to prepare and deliver to appellant a transcript, omitting therefrom certain papers which he averred were not necessary to a proper revision of the questions arising on the appeal, or that said papers be stricken from the transcript and appellee charged with the costs of including them therein. The mandamus, for reasons stated in a written opinion delivered by Mr. Chief Justice Rainey, which need not be repeated here, was refused, and a decision of the question of striking out the papers at appellee's cost was reserved until a determination of the case on its merits. The papers sought to be stricken from the record are appellee's original petition, his amended petition, the original answer of appellant Baum and Whiteselle, appellee's bills of exception ten and eleven, the affidavits of jurors and Richard Mays in support of the said bills, and the appellee's cross-assignments of error. We are of opinion the pleadings and bills of exception referred to can not be considered in reviewing the ruling of the lower court, and that appellee should be taxed with costs of including them in the transcript. By amendments filed, said pleadings were abandoned, and form no part of the pleadings necessary or proper to be incorporated in the transcript. Of course, if either or all of said documents had been offered and admitted in evidence as tending to establish some issue of fact, it would have been proper to include them in the statement of facts; but it does not appear that either of them was so offered and admitted. On the contrary, they are found in the record simply as pleadings which had been abandoned, as stated, and their presence in the transcript can serve no purpose whatever in the disposition of the appeal.

In reference to the bills of exception and affidavits mentioned, it appears that they relate to a proceeding or matter which occurred in the trial, excepted to by appellant and covered by his bills of exception numbers ten and eleven, which were by the court approved and made a part of the record. The bills of appellee, proved up by affidavits, seem to have been prepared and the affidavits secured in support thereof on the theory that the statutes of this State relating to the taking and preparation of bills of exception are broad enough to authorize such course. Article 1360 of the Revised Statutes provides that, "whenever in the progress of a cause either party is dissatisfied with any ruling, opinion or other action of the court, he may except thereto at the time the same is made or announced, and at his request time shall be given to embody such exception in a written bill."

It then becomes the duty of the party taking the bill to present it to the judge for his allowance and signature, who shall in turn submit it to the adverse party or his counsel, if in attendance upon the court, and, if found correct, it shall be signed by the judge and filed with the clerk. (Article 1366.) Should the judge, upon presentation of the bill, find the same incorrect, he shall suggest to the party or his counsel, who drew it, such corrections as he may deem necessary therein, and if they are agreed to, he shall make such corrections and sign and file it (article 1367); but if the party does not agree to such corrections, the judge shall return the bill with his refusal endorsed thereon, and shall make out and sign and file with the clerk such a bill of exceptions as will in his opinion present the ruling of the court as it actually occurred. (Article 1368.) Article 1369 provides: "Should the party be dissatisfied with the bill of exceptions filed by the judge, as provided in the preceding article (1367), he may, upon procuring the signature of three respectable bystanders, citizens of this State, attesting the correctness of the bill of exceptions as presented by him, have the same filed as part of the record of the cause," etc.

It will be observed that the last quoted article of the statute only makes provision for the proving up of a bill of exception at the instance of the party excepting to the ruling of the court, by bystanders. It does not either expressly or by implication authorize, in our opinion, the party not complaining at the court's ruling excepted to by the other party to the suit, to prove up a bill of exception reflecting his version of what occurred and the court's ruling thereon. Article 1369 provides that where the party excepting to the court's action is dissatisfied with the bill filed by the judge, and he avails himself of the benefits of that statute, the truth of the matter as set out by him in his bill and in the supporting affidavits may be controverted by similar affidavits secured by the adverse party, but it does not authorize such party, as it does the party complaining of the ruling, to impeach the bill prepared or approved by the judge and ordered filed, or to impose upon the appellate court by the procedure therein provided the duty of determining which bill is correct. Nor does the fact that the judge failed or refused to submit the bill prepared by the party taking it to the adverse party, authorize such procedure. Without statutory authority for so doing, the bills of exception prepared by appellee and copied in the record at his instance can not therefore be considered.

In regard to the cross-assignments of error filed by appellee, it may be said that neither the statute nor the rules contemplate that such assignments shall be incorporated in the transcript. Rule 101, relating to the filing of assignments of error, provides that the appellee may file cross-assignments with the clerk of the trial court when he files his brief, which may be incorporated in his brief and need not be copied in the transcript. It was the evident purpose of this rule to place the burden of bringing or presenting such assignments to the appellate court on the appellee, and prevent the encumbering of the record with them at the probable expense of the appellant. The cost of incorporating said papers in the transcript will therefore be taxed against the appellee.

Upon the merits of the case appellant assigns that the court erred (1) in not charging the jury to return a verdict for defendants, because plaintiff based his suit on an express contract for pay for his services, and the evidence showed he had only an implied contract therefor; (2) in submitting to the jury whether or not there was an express contract made between defendant I. Baum and the plaintiff for five percent commissions upon the price for which the land was sold, because there was no evidence on which to base such charge; (3) in submitting to the jury the question as to whether or not the defendant Baum, acting for himself only, agreed to pay plaintiff five percent commission for making sale of the land, because there was neither pleading nor evidence upon which to base such charge; (4) the verdict of the jury is contrary to the evidence in that there is no evidence showing that there was a contract by which defendants Whiteselle and Baum agreed to pay plaintiff five percent commission on the sale of the land; that there is no evidence which shows there was an agreement between plaintiff and defendants or between plaintiff and defendant Baum, by which Baum agreed to pay, for himself only, five percent commission upon the sale of the land. We overrule each of these assignments. The express contract declared on by appellee, and upon which he seeks to recover, was that appellant, acting for himself and Whiteselle, agreed to pay him five percent of the amount for which the land was sold, and the evidence, although conflicting, was sufficient to require the submission of the issue to the jury. Appellee did not seek a recovery for one-third of the profits arising from the purchase and sale of the land for appellant and Whiteselle, nor did he sue upon the implied promise to pay what his services were reasonably worth, but he sued for the five percent commission which he says was agreed to be paid him. He testified that the allegation in his petition to the effect that he had a contract with Baum and Whiteselle for a third of the profits on the sale of the land is not true; that Whiteselle in the presence of Baum told him to go ahead and make the sale, and that they would treat him right about it, and that afterwards Baum told him that Whiteselle had authorized him, Baum, to settle the matter, and, acting for himself and Whiteselle, agreed to pay the five percent commission. In this connection he stated: "Baum never did tell me that he (Baum) would give me five percent;" but we are of the opinion that the legal effect of appellee's promise and agreement made with Baum is to render Baum, if not Whiteselle, liable for the whole amount of the five percent commission, hence the court's charge in the particulars complained of is not erroneous; neither is the verdict of the jury unsupported by the evidence in either respect charged by the assignments.

Where two or more make a joint promise, each is liable to the promisee for the whole debt or liability. This is true in a joint obligation as well as in a joint and several obligation. In either case, "each obligor who is bound at all is legally liable *in solido* for the whole undertaking." (Allin v. Shadburne's Executor, 25 Am. Dec. (Ky.), 121, (47 Maine, 370); 74 Am. Dec., 491.) In the last cited case it is said: "Where several persons are jointly indebted, and one of them pays his specific share of the debt, and it is received and re-

ceipted for by the creditor as such, such payment will not exonerate the party paying from his liability for the residue of the debt." We do not think that either the case of Speake v. White, 14 Texas, 365, or Willis v. Morrison, 44 Texas, 27, is authority for the contention of appellant to the effect that if Whiteselle did not authorize Baum to make the agreement to pay appellee the five percent commission sued for, and was not therefore bound thereby, then Baum was not liable therefor. In Willis v. Morrison, *supra,* the suit was instituted by P. J. Willis & Bro. against John H. Morrison and H. C. Hunt, as merchant partners, doing business under the firm name of John H. Morrison & Co., on a draft drawn on Double & Wooters in favor of P. J. Willis & Bro. and signed, "John H. Morrison & Co., per T. C. Hooker." This instrument was partly paid, and to recover the balance due thereon the suit was brought. It was alleged that Morrison and Hunt were partners; that Hooker was their agent, and judgment asked against them. Morrison plead the general issue, and Hunt *non est factum,* and that he was not, at the time said draft was executed, a partner in said firm. The court, at the close of his charge relating to the law arising upon the issues presented, instructed the jury as follows: "If you can not find against defendant Hunt, neither can you find against defendant Morrison." In holding this to be an incorrect charge, Mr. Chief Justice Roberts said: "The action was founded on the draft, and not on the account for the settlement of which it was given, and the petition claimed a judgment on it against both defendants as partners, and prayed for general relief. The facts, as presented in the record, showed that both defendants were liable for the debt for which the draft was given, and that it was given by Hooker by the authority and direction of Morrison in the settlement of an account due from the firm of Morrison & Co. to the plaintiffs, though the account was not set out and declared on as constituting the cause of action, either in whole or in part, in the petition. The effect of the charge referred to was that, if Hunt maintained his defense of *non est factum,* and was not liable to be sued on the draft, it constituted no cause of action in this suit against Morrison, and that they should not render a verdict against him in this case." Then followed a review of the case of Speake v. White (14 Texas, 365), which was cited in support of the contention that the charge in the Willis-Morrison case was correct, and attention called to the fact that the only question of law discussed in the opinion in the Speake-White case was, whether one partner has the power to bind the firm by his acknowledgment of an antecedent indebtedness after the dissolution of the partnership, and that a judgment in favor of both defendants in that case was affirmed without noticing a similar charge to the one given in the Morrison case. In further discussion of the Speake-White case Judge Roberts says: "The acknowledgment in that case, in and of itself, was not the cause of action declared on, but it was set out in connection with the account as evidence of its correctness, the suit being in the nature of an action on an account stated. The acknowledgment was not, therefore, a contract, like a note or draft, given to settle a previous account which, when given, becomes a new contract on which an action may be brought without any dependence

upon the previous account. Under this view of that case the court might well have held that the acknowledgment, being used as proof and not as a contract, was not sufficient to establish the correctness of the account against the firm, and if not against the firm, it did not establish it as against White as one of the firm. They might have held very differently, however, if White, instead of acknowledging the correctness of the account, had given a note to which he subscribed the firm name, after the dissolution of the partnership, in settlement of said account. In that case the suit could be founded on the note which, if negotiable, would import a consideration, and if not negotiable, one could be averred for it, as it was done in this case. The question in such a case would be, Can a suit be maintained against the one who makes a note by signing his own name and that of another without any authority from such other person? There is no question, it is presumed, that such a suit can be maintained singly against the one signing the note upon proper averments and proof of the non-liability of the other."

We are unable to distinguish, in principle, the case at bar from the case of Willis v. Morrison, and regard it as authority in support of the judgment of the lower court, rather than an adjudication against it. Here, as in that case, the suit is founded on the new contract made by appellant Baum to pay the five percent commission, and not on the original and implied contract to pay what appellee's services in making the sale of the land were reasonably worth. Both contracts were verbal, and at least of equal dignity, the express contract to pay the commission taking the place of the implied contract, and why the principle announced in the Willis-Morrison case is not applicable we are unable to perceive. The evidence shows, as in the Willis-Morrison case, that both Baum and Whiteselle were liable under the original contract to appellee for the payment of whatever amount his services were reasonably worth, and that the contract sued on was made by Baum in substitution of the said original contract, and we see no good reason why the suit can not be maintained against Baum, although such new contract was not in writing, and even though it was made without authority from Whiteselle. In the case of Willis v. Morrison, above referred to, it is said, in effect, that "the rigid system of the common law as to forms of action, which required the plaintiff to be nonsuited if he sued two persons on a joint contract and one of them showed himself not to be liable on the contract, is contrary to the whole current of our practice and decisions from the earliest times of our judicial history."

The eighth assignment is to the effect that the court erred in permitting the attorney for plaintiff in his closing argument to make a statement and argument to the jury, unwarranted by the pleading and evidence, which was calculated to prejudice and mislead the jury to the injury of defendants. This assignment is not accompanied by any separate proposition, but is submitted as a proposition itself, and is, we think, under the rules, too general. Besides, looking to the statement made in support of the assignment, we find that it is based upon two distinct statements made to the jury in argument, and involves the decision of two separate and distinct questions. This

is not in accordance with the rules regulating the briefing of cases in this court, and the assignment is not, therefore, entitled to consideration. If, however, the matters were properly presented in the brief, neither of them would require a reversal of the case. ·

The ninth and eighteenth. assignments are grouped, and relate to the admission of certain testimony. Neither of the assignments, nor the proposition or statement made under them, set out, except in a very general way, the testimony objected to, and it does not appear that bills of exception were reserved to the court's ruling, or, if so, where they may be found in the record. In this condition of the brief the assignments will not be considered.

The questions presented in assignments ten, eleven, twelve and thirteen have been decided against appellant in what has been said in a former part of this opinion.

The fourteenth and fifteenth assignments are grouped. They complain of separate and distinct matters in no way related, so far as we are able to tell from the brief; they are not supported by a statement of the material facts, and are not entitled to be considered by this court.

The other assignments have either been disposed of by what has already been said or disclose no reversible error.

We conclude the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*