CITY OF SAN ANTONIO v. REED et al.
(No. 5747.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1917. Rehearing Denied Feb. 28, 1917.)

1. ACTION ⊜⊃13—RIGHT TO SUE—CHOSES OF ACTION.
 The holder of a bare legal title to a chose in action may sue thereon, although he has no beneficial interest.
 [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 76–83.]

2. CONTINUANCE ⊜⊃29 — RIGHT TO SUE — CHOSES IN ACTION.
 In suit by the assignee of the legal title to chose in action, where defendant by cross-examination developed the fact that plaintiff held for the equitable use of the real owner, such evidence not being admissible under the pleadings, it was not error to overrule defendant's application to withdraw announcement of ready on the ground of surprise.
 [Ed. Note.—For other cases, see Continuance, Cent. Dig. § 95.]

3. ASSIGNMENTS ⊜⊃132 — RIGHT TO SUE — CHOSES IN ACTION—ISSUES AND PROOF—EVIDENCE.·
 In an action by the assignee of a chose in action, it was not error to admit testimony of the amounts due on the theory that there was a fatal variance between pleadings and proof, though it was shown on the trial that the assignors retained·a beneficial interest.
 [Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 227, 228.]

4. JURY ⊜⊃139 — SELECTION OF JURY — CONSULTATION.
 There is no statute prohibiting parties from consulting and acting together in exercising their challenges.
 [Ed. Note.—For other cases, see Jury, Cent. Dig. § 627.]

5. APPEAL AND ERROR ⊜⊃1045(1)—HARMLESS ERROR — SELECTION OF JURY — NUMBER OF CHALLENGES.
 In action against a city and an individual, where the individual filed a cross-bill against the

city, and the subject of the cross-bill and the petition arose from the same transaction, the cross-complainant having assigned part of his claim to the plaintiff, while it was not proper to allow the plaintiff and the individual each six challenges, there ·was no ground for complaint where the individual and the plaintiff each exercised but three challenges.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4124.]

6. ABATEMENT AND REVIVAL �köö84 — PLEA IN ABATEMENT—TIME FOR FILING.

Where, after defendant had answered on the merits, it asked leave to file a plea in abatement, but failed to ask leave to withdraw its pleadings, the plea in abatement must be overruled.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 155, 176, 507–510; Pleading, Cent. Dig. § 212.]

7. MUNICIPAL CORPORATIONS ⊸340—PUBLIC IMPROVEMENTS — CONTRACTS — POWERS OF CITY OFFICERS.

Where the city empowered the mayor to enter into a contract for street paving, the work to be controlled by the city engineer, it was beyond the mayor's.powers to include in the contract an arbitration agreement, and the city was not bound thereby; the principle that those dealing with an agent are bound to ascertain the nature of his authority being more strictly applied in regard to municipal corporations than private corporations.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 869.]

8. APPEAL AND ERROR ⊸1050(1)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

But error in admitting evidence of such arbitration agreement was not prejudicial, where the findings, aside from that relating to the arbitration, were sufficient to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

9. PARTIES ⊸25 — PROPER PARTIES — INTEREST.

It is proper for all parties claiming an interest in the fund in suit to be joined in order that all, rights may be determined in one suit.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 31, 36–40.]

10. LIMITATION OF ACTIONS ⊸127(13) — AMENDMENT—NEW CAUSE OF ACTION.

Where the petition as first brought by a materialman against a city was amended to set up assignments by the contractor to the materialman, the action was not barred on the theory that a new cause of action was stated.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 545; Pleading, Cent. Dig. § 688.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by James M. Reed against R. G. Scott, the Texas Fidelity & Bonding Company, the Frost National Bank, and the City of San Antonio. The Bonding Company demurred to the petition, and went out of the case without objection on the part of plaintiff; the bank filed a disclaimer and was dismissed, and Scott filed an answer and cross-bill. Judgment for Reed against Scott and the City, and for Scott against the City, and the City appeals. Affirmed.

Geo. R. Gillette, Robt. J. McMillan, and R. G. Harris, all of San Antonio, for appellant. Leo Tarleton, Ryan & Matlock, and Frank H. Wash, all of San Antonio, for appellees.

MOURSUND, J. James M. Reed sued R. G. Scott, the Texas Fidelity & Bonding Company, the Frost National Bank, and the City of San Antonio, to recover $549 and interest, which he claimed Scott owed him. He alleged that the sum of $417 was due him for work which he had done and teams which he had furnished for work to be done on Buena Vista street in the city of San Antonio; that the sum of $70 had originally been owing by Scott to William Small and the sum of $62 to M. D. Crowell, which claims Reed alleged had been transferred to him by said parties, and of which he alleged he was the owner. For cause of action against the city of San Antonio he charged that the work was done by him and by Crowell and Small upon· Buena Vista street, one of the streets in San Antonio; that Scott had a contract with the city of San Antonio for grading and macadamizing Buena Vista street, and that the city of San Antonio had retained out of moneys owing to Scott on that contract over $2,000; that the city had the right to, and should have made provision in its estimates of payments to said Scott.for, the payment of all claims for labor and material, and that it was bound to pay, or cause to be paid, all of said claims. Therefore he claimed that he had some character of lien on said money in the city's hands, and asked that he recover judgment against the city for such amount as he recovered against Scott. He brought the Texas Fidelity & Bonding Company·into the suit as a surety for Scott, and the Frost National Bank as claiming some interest in the funds in the city's possession. Said Fidelity & Bonding Company urged a demurrer to the petition, which was sustained, and it went out of the case without objection on the part of plaintiff. The Frost Bank filed a disclaimer, and was dismissed from the case, leaving Reed, Scott, and the city of San Antonio the only parties remaining.

Defendant Scott filed a first amended original answer and cross-bill in the case. In this answer he denied that he owed Reed the amount of money claimed as due to him and the amounts claimed to have been owing to Crowell and Small, but said, on the contrary, that the total amount which he owed to the plaintiff, Reed, upon all of Reed's claims, was $410.

Having pleaded this issue of fact between himself and Reed, he then pleaded over against the city of San Antonio by way of cross-bill. In his said cross-bill, the said Scott charged that on or about the 15th day of February, 1913, he and the city of San Antonio entered into a contract for the macadamizing of Buena Vista street between South Pinto street and South Murray street, and that the city bound itself to pay him the sum of $9,800 for the work. A copy of the contract was attached to the cross-bill. He alleged that he went to work under said con-

tract on February 20th, and proceeded in strict accordance with the plans and specifications contained therein, and received from the city the regular payments in accordance with the terms thereof; that on or about May 28, 1913, the city of San Antonio took the work away from him and proceeded to complete the macadamizing of the street with its own forces; that at the time the city took the work away from him he had been complying with his contract, and that, while a number of delays, which he sets out in his cross-bill, had occurred, they were either caused by the city of San Antonio or by a strike upon the part of his men, or by such inclement weather as to make it impossible for him to work.

Defendant Scott charged: That the city of San Antonio had failed to comply with its contract in giving him his monthly estimates in order to enable him to pay his men, and that by reason of that fact he had had a strike upon his work which had operated to delay same. That on or about May 21, 1913, he had received from the mayor of the city of San Antonio a letter which he sets out in his cross-bill, advising that the work was not proceeding satisfactorily, and was being so delayed that it could not be finished within the time provided for by the contract, to wit, 90 working days, and that unless he proceeded with the work with due dispatch the city would exercise its right, retained in clause 8 of the contract, to complete the work at his charge and expense. To this he responded through his lawyer, Mr. Walsh, setting out in detail the delays which he claimed to have sustained, and offered, in event the city disagreed with him as to whether the work was properly proceeding or not, to arbitrate the matter in accordance with paragraph 5 of the contract. That in response to this letter he received one from the Mayor's secretary, advising him that the mayor was considering the matter and would take it up with him again. That on May 28th the city of San Antonio took over the work and proceeded to complete same with its own forces. Said Scott charged that this was done in violation of the provision of the contract providing for arbitration, and, furthermore, that the city was in error in assuming that the work was not proceeding properly, and that he was proceeding with due dispatch, with proper allowances for the delays provided for in the contract.

Defendant Scott further charged that at the time the work was taken away from him it was about three-fourths completed; that according to the estimates of the city engineer he had earned $7,468.66, and that he had been paid only $5,013.60, one-fourth of such estimate having been retained by the city; that he could have completed the work, had he been permitted to do so, for the sum of $2,000, and that the city had therefore damaged him by taking the work from him, to the

extent of $2,787.40. He also claimed $58 for tools and materials which he said the city had taken, and prayed that the plaintiff Reed take judgment against him only for $409.50, and that he have judgment over against the city for the amount of his damages as alleged by him.

On November 8, 1915, Reed filed an amended petition, containing averments substantially the same as in his original petition, save that he alleged that on or about the ——— day of July, 1913, the defendant Scott had transferred, assigned, and set over unto him such an interest in the funds arising from the contract with the city as would pay and satisfy his, the said Reed's, claims. This amendment was filed to meet the ruling of the trial court to the effect that there was no privity between said city and Reed, and that Reed had no direct claim upon such a fund as might be in the city's hands.

The defendant Scott filed a third supplemental answer, and admitted that he had made such an assignment to the said Reed.

The city of San Antonio answered plaintiff's petition by general demurrer, special exceptions, pleaded that his cause of action was barred by limitation, inasmuch as in his original suit in July, 1913, he simply charged that the city had funds of Scott's in its hands, and that it should protect plaintiff as a labor and material man, whereas in his amended petition filed in November, 1915, he changed his cause of action against the city and set up an entirely different cause of action, claiming that he had an assignment of funds in the city's hands. The city denied that there was any privity between it and the plaintiff, Reed, and alleged that it was under no obligation to see that the said Reed was paid, even though it had funds of Scott's in its hands, which fact it denied. It denied that it had any dealings or transaction with plaintiff in the matter at all, and represented to the court that any cause of action which plaintiff might have was against the defendant Scott, and not against the city of San Antonio.

Answering the cross-bill of defendant Scott, the city first pleaded in abatement, charging a misjoinder of causes of action, stating that plaintiff's suit was originally a suit against Scott for debt, and, in effect, an attempt at garnishment against the city of San Antonio, whereas the cross-bill of the defendant Scott against the city involved a construction of the contract between him and the city, the merits of the controversy between him and the city with regard to his performance of said contract, and various questions of law and fact with reference to the city's liability to said Scott for profits, etc. The city alleged that these were issues not involved in the original suit, and were improperly joined in this cross-bill.

The city further answered by a general demurrer, special exceptions, a general denial, and specifically denied that it had retained

in its possession $2,000 belonging to Scott. It denied that the said Scott was proceeding to carry out his contract with due diligence and dispatch, and, on the contrary, represented to the court that he had wholly failed and refused to carry out said contract, and had made default in the performance thereof; that he had neglected his work and failed to pay his employés, thereby creating a strike among them in such a manner as to render it impossible for him to proceed with the work; that said work was laying in a partially completed condition and rapidly deteriorating; that the said Scott, though repeatedly warned by the city that the work was not progressing in a satisfactory manner, and though repeatedly advised that the work could not be completed in accordance with the contract in the way in which he was doing it, failed and refused to comply with his contract and to use due diligence and dispatch; that, in spite of these facts, he failed and refused to go ahead with the work, making it necessary for the city to take same over under the terms of the contract, for the purpose of completing same.

The city also denied that it had in any way caused any delay in the work, on its part, and denied that he was entitled to the time for the many delays claimed by him for the various reasons set out by him in his cross-bill.

To this answer of the city the defendant Scott filed a third supplemental answer containing several special exceptions and a general denial.

Upon the trial of the case the city filed, with leave of the court, a first trial amendment, in which trial amendment it excepted to that portion of Scott's original answer in which he charged the city with having disregarded the provision for arbitration, in the contract, because the ordinance attached to said answer showed that the mayor was not authorized to enter into a contract providing for arbitration of disputes.

The city further alleged, without waiving the benefits of its exceptions, that the mayor, in entering into a contract providing for arbitration,. had exceeded the authority given him by the ordinance passed by the city council, which ordinance simply authorized him to enter into a contract providing for the paving of the street in accordance with the plans and specifications prepared by the city engineer, and that said plans and specifications contained no provisions for arbitration, but, on the contrary, provided that the work should be entirely under the control of the city engineer.

The city of San Antonio also filed a second trial amendment, in which trial amendment it denied that said Scott had earned $7,468.66 as charged by him, and denied that he had been damaged in the sum of $2,787.40, as charged by him.

The city then set up in detail the amount of money which it had expended in complet-

ing the work, giving an itemized statement thereof, the total of which was $4,420.47. It further charged that by reason of Scott's default in the premises it became necessary for the city to employ the time and effort of its engineer in completing said Scott's work, and to use the services of other persons, especially one A. B. Manness, to supervise and control said work; that these parties were required to give more time to same than they would have had to give had the said Scott completed the work himself, to the city's damage in the sum of $600.

To this trial amendment the defendant Scott replied by a fourth supplemental answer and cross-bill, in which he specially excepted to the city's allegation with regard to having been damaged to the extent of $600 by reason of having employed its engineering force to complete this work. This special exception the court sustained, over the city's protest. Defendant Scott also denied the allegations contained in said second trial amendment.

The pleadings are voluminous, but the foregoing statement thereof, most of which is a literal copy of the statement in appellant's brief, will, we think, be sufficient in view of the matters complained of in the brief.

The case was submitted upon special issues, and upon the answers by the jury the court rendered judgment in favor of Reed against Scott and the city for $451 with interest, and in favor of Scott against the city for $2,786.90, from which amount it deducted the $451 awarded to Reed, leaving a judgment in favor of Scott against the city for $2,336.90, with interest thereon at the rate of 6 per cent. per annum from August 1, 1913.

By the first assignment of error complaint is made because the court overruled appellant's application for leave to withdraw its announcement of ready for trial and to continue the cause to a later date. The facts are as follows: Reed alleged that Crowell and Small had for value transferred and assigned to plaintiff their claims, and that plaintiff was the holder and owner thereof. He did not sue said parties upon any warranty or guaranty. Upon the trial it developed that Crowell and Small had only assigned the claims to Reed in order that he might sue thereon, and, if successful, collect the proceeds and deliver the same to Crowell and Small. Thereupon appellant made its application above mentioned, setting out, in substance, that it had not been apprised in any way of the fact that the real ownership of the claims remained in Crowell and Small, and had been deprived of its opportunity of testing the jury's relationship and friendship to Crowell and Small. The court then asked the jurors some questions, in answer to which it developed that Juror Haley knew Crowell, and had at one time had him in his employ. Haley testified that

this fact would not influence him in finding a verdict. Thereupon the court excused the jury from the room, and suggested to counsel that Haley be excused from the jury by agreement, to which counsel for appellant consented, but counsel for plaintiff Reed and defendant Scott refused to agree. Thereupon counsel for appellant demanded that he be excused, but the court overruled such demand. Appellant then again presented its application for leave to withdraw announcement of ready, etc., which was overruled by the court.

[1, 2] Our decisions sustain the right of the holder of the bare legal title to a chose in action to sue thereon, although he has no beneficial interest. Continental Oil & Cotton Co. v. Gin & Machine Works, 62 Tex. Civ. App. 422, 131 S. W. 415; St. Louis & Southwestern Ry. v. Jenkins, 89 S. W. 1107; Wells Fargo v. Pugh, 185 S. W. 61; Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30. It appears, furthermore, that in such cases, in the absence of equities against the real owner being pleaded, the inquiry as to who is the real owner is not pertinent to any issue in the case. Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95; Martel v. Hernsheim, 5 Tex. 209; McMillan v. Croft, 2 Tex. 397; Grayson v. Winnie, 13 Tex. 288. In this case the appellant, on cross-examination, developed the fact that Small and Crowell were still the real owners of the claims assigned to Reed. Had Reed objected, such evidence would have been excluded, for there were no pleadings which justified its introduction. Upon the facts as disclosed by the pleadings the city found it unnecessary to interrogate the jurors in regard to their acquaintance with Small and Crowell. Had it not introduced irrelevant testimony, the facts which caused it to regret the failure to make such inquiries would not have been developed. Under the circumstances, we fail to see any error in overruling the application. The first assignment is overruled.

[3] By the second assignment it is contended the court erred in admitting testimony of the amounts due because of the services of Crowell and Small, the theory of the city being that there is a fatal variance between the pleadings and the proof, owing to the disclosure of the fact that said parties retained the beneficial ownership of their claims. The assignment is overruled upon the authority of the decisions above cited.

[4] Complaint is made of the ruling of the court in allowing Reed and Scott each six challenges, and in permitting counsel for said parties to strike the jury together. In the case of First National Bank v. Railway, 97 Tex. 201, 77 S. W. 412, the Supreme Court held that there was no statute prohibiting parties from consulting and acting together in exercising their challenges. This decision disposes of the second objection made by the city.

[5] Though at common law a part of a claim could not be assigned without the consent of the debtor, the rule in equity, sustaining such assignments, prevails in this state. Avery v. Popper, 92 Tex. 337, 49 S. W. 219, 50 S. W. 122, 71 Am. St. Rep. 849. Partial assignments are given effect because all parties may be brought into court and protection given the debtor; but the concession is made upon the condition that the debtor be not subjected to more than one suit, and that he be not prejudiced. Harris Co. v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791. If separate suits are brought and they are consolidated, the debtor should be taxed only with costs in one. Avery v. Popper, supra. If specific sums are assigned there would be no controversy between the various owners, and they would be entitled to only six challenges jointly, but our courts have sustained assignments for a sum to be fixed by judicial inquiry. Milmo National Bank v. Convery, 8 Tex. Civ. App. 181, 27 S. W. 828; Campbell v. Grant Co., 36 Tex. Civ. App. 641, 82 S. W. 794. Of such character was the assignment obligingly made by Scott to Reed after the suit had been instituted. If courts of equity in their liberality to assignees are going to subject persons, against whom a claim is asserted, to a trial in which every assignee of a part of the alleged claim will be awarded six challenges, and all may act in concert in striking names, it cannot be said that such alleged debtor is not prejudiced by permitting such assignments to be made. It is difficult to see why he should not have as fair a chance to defeat the claim split into parts as he would have to defeat the suit of the original claimant alone. For these reasons we are inclined to the view that if owners of claims split them up in such a manner as to create controversies between themselves and the holders of portions thereof, all of such holders should together be allowed only one set of challenges. However, the decision of such question is not necessary on this appeal, because we are required to overrule the assignment upon a ground, which, though technical, appears to be established by our decisions. The bill of exceptions fails to show any reversible error. Reed and Scott each exercised three challenges. The city exercised four, and the jury was obtained from the regular panel. It is true that if Reed and Scott had been limited to six challenges the city would have been more free to use its two additional challenges, because there would not have been danger of having to select from talesmen. However, the bill of exceptions fails to show that any objectionable juror was accepted by reason of such facts, and it may be doubted whether the city could refrain from striking the name of such a juror on the theory that jurors more objectionable might be obtained in the event talesmen were summoned. In support

of the holding that the bill of exceptions fails to show reversible error we cite: Waggoner v. Dodson, 96 Tex. 6, 68 S. W. 813, 69 S. W. 993; Paris Grocer Co. v. Burks, 99 S. W. 1136; I. & G. N. v. Bingham, 40 Tex. Civ. App. 469, 89 S. W. 1113; Sweeney v. Taylor Bros., 41 Tex. Civ. App. 365, 92 S. W. 442. The third assignment is overruled.

It may be said in passing that these decisions, as well as the difficulty of showing on motion for new trial that controversies were simulated, illustrate the difficulty courts will have in protecting alleged debtors, if each assignee is awarded six challenges.

[6] Appellant also complains of the overruling of its motion for leave to file a plea in abatement after the trial had begun, in which plea appellant contended the evidence disclosed that the sums claimed by Reed had been fraudulently exaggerated for the purpose of giving jurisdiction to the district court. As appellant did not ask leave to withdraw its pleadings, we cannot assume that such was its intention, and it is well settled that the plea in abatement should be overruled unless filed prior to pleas to the merits. Appellant relies upon the case of Hoffman v. Bldg. Ass'n, 85 Tex. 409, 22 S. W. 154, but it does not appear that it brought itself within the terms of the rule therein announced.

[7] The fifth assignment of error reads as follows:

"The court erred in taking into consideration, or permitting the jury to take into consideration, in this case, the paragraphs in the contract with regard to arbitration, over the objections raised by the city by special exception and by special plea and by requested special charge, because the mayor of the city of San Antonio exceeded his authority in inserting said provisions for arbitration in the contract, the city council having only authorized him to enter into a contract with the said Scott for the paving of Buena Vista street in accordance with specifications prepared by the city engineer, which specifications provided that the work should be under the control of the engineer, and contained absolutely no provisions for arbitration."

The charter provided that no contract on the part of the city shall be made or authorized otherwise than by ordinance. The ordinance authorizing the mayor to enter into a contract with Scott provided that the mayor is authorized to enter into a contract in accordance with the plans and specifications prepared by the city engineer and with the proposal of R. G. Scott. Scott's proposal was to macadamize Buena Vista street in accordance with the plans and specifications prepared by the city engineer for the sum of $9,-800; time required, 90 working days. The so-called plans and specifications contained provisions to the effect that the subgrade was to be rolled to the satisfaction of the city engineer; that limestone rock, eight inches thick, after being rolled to the satisfaction of the city engineer, shall then be placed on subgrade; that the work is to be entirely under control of city engineer; that he may, by

written notice, require the removal from the premises of any material worked or unworked, not in accordance with the specifications; that the city will always withhold 25 per cent. of amount due as a guaranty of satisfactory completion of the work, and total amount will be paid after the completion of the work and final acceptance by the mayor upon recommendation of city engineer, "provided said macadam shall be found in sound and satisfactory condition and free from any defect." A copy of the plans and specifications was attached to the contract made by the mayor with Scott. In said contract it is provided:

"In case of any dispute in relation to construction or completion of the work or material, or the quantity or quality of the work or material, or the interpretation of the plans and specifications bearing on the work, such dispute shall be referred to a disinterested competent third party selected by the mayor and said Scott as umpire, and should they not agree on such selection, then the mayor and said Scott shall each appoint an arbitrator, and these two shall select a third. The decision of such umpire or of a majority of said arbitrators (as the case may be) shall, on all points of dispute, be final."

Speaking of the power of public agents or officers to make contracts, Mr. Dillon, § 775 (5th Ed.) says:

"Public corporations may by their officers and duly authorized agents make contracts within the scope of their legislative powers the same as individuals and other corporations, in matters that appertain to the corporation; being artificial persons, they cannot contract in any other way. Public officers or agents are held more strictly within their prescribed powers than private general agents; and a contract made by a public agent within the apparent scope of his powers does not, if there be no estoppel, bind his principal in the absence of actual authority. A distinction has been held to exist in certain cases at least between the acts of an officer or agent of a public municipal corporation and those of an agent for a private individual. In cases of public agents the public corporation, it is said, is not bound unless it manifestly appears that the agent is acting within the scope of his real and lawful authority, or he is held out by the authorized and proper officials or body of the municipality as having authority to do the act, or is employed in his capacity as a public agent to make the declaration or representation for the government."

[8] We believe that the legal rights of the parties under the arbitration clause above set out differ from those which follow from the provisions contained in the so-called plans and specifications mentioned in the ordinance and attached to the contract. Dillon on Municipal Corporations (5th Ed.) §§ 823, 813. The principle that those dealing with an agent are bound to ascertain the nature and extent of his authority is more strictly applied in regard to municipal corporations than private corporations. Dillon on Municipal Corporations, § 777. The ordinance constituted the grant of power to the mayor to make a contract, and limited his power to the provisions of the "plans and specifications." In so far as he exceeded such authority he did not bind the city, and

we believe he had no authority to insert the arbitration clause, and thus materially change the terms he was directed to embrace in the contract. Appellant does not indicate in the brief in what way it was injured by the rulings so complained of. The following facts were found by the jury in answer to special issues: That, at and prior to the time the city of San Antonio took over said work, defendant Scott was proceeding with the same with such speed and diligence as would have enabled him to have completed the same in accordance with the terms of his contract; and, had the city of San Antonio not taken charge of said work, he could and would have performed and completed the same in compliance with his contract; that Scott would have been required to expend $2,000 to have completed said work; that the reasonable value of the work performed and material furnished by Scott on said work up to the time the city took over the same was $7,469.33; that the cost and expense to Scott of the work performed and material furnished on said work, up to the time the city took over the same, was $6,300: that the city spent $4,420.47 in the completion of the work covered by the contract; that the entire sum so expended was not reasonable and necessary; that $2,425.17 of said amount was reasonably and necessarily spent in the completion of said work; that Scott owed plaintiff Reed $323.50 for the services of himself and his teams; that Scott owed $70 on the William Small claim, and $57.50 by reason of the Crowell claim; that the city did not take possession of any of the tools belonging to Scott described in paragraph 44 of his first amended original answer, filed October 24, 1913; nor any material of value described in said paragraph; that the city refused to submit to arbitration matters in dispute arising under the contract; and that Scott did not abandon his contract, prior to the time that the city took charge of this work.

The findings, other than the one relating to arbitration, are amply sufficient to support the judgment, and demonstrate that the facts did not exist which would, under the contract, have authorized the city to take over the completion of the work. Had the jury found in favor of the city on such other issues, Scott would have been compelled to contend that regardless of such findings the city had no right under the contract to take charge without first submitting to arbitration. No contention is made that any of said findings are not supported by evidence, and so far as is disclosed by the appellant's brief, they may be overwhelmingly sustained. We do not believe that we are required to read a statement of facts of 247 pages to see if testimony relating to failure to arbitrate is probably prejudicial in view of testimony on other issues, and thus determine whether the court should have eliminated all references to arbitration in pleading and excluded all evidence relating thereto. The assignment does not show any reversible error.

[9] Appellant's sixth assignment complains of the overruling of its demurrers and plea in abatement charging misjoinder of causes of action. We overrule this assignment because our decisions indicate that it is proper for all parties claiming an interest in the fund to be joined, in order that all rights may be determined in one suit.

[10] Appellant contends that the court erred in not holding Reed's cause of action to be barred by limitation, such contention being based on the theory that by amending and claiming an interest in the fund by assignment a new cause of action was set up. After such amendment plaintiff was merely seeking to recover from the city a part of a debt alleged to be due Scott by the city. If the city could not defeat Scott's claim by pleading limitation it is clear that Reed's claim for part of the fund is not barred by limitation. The seventh assignment is overruled.

There is no merit in the remaining assignments and they are overruled.

The judgment is affirmed.