JOHN M. AVERY ET AL. v. I. POPPER & BRO. ET AL.

No. 654.   Decided December 19, 1898—January 30, March 23, 1899.

1. **Assignment—Part of Claim—Separate Suits—Costs.**

Though at common law a part of a claim, e. g., a promissory note, could not be assigned, the rule in equity sustaining such assignments prevails in this State; the assignees should not bring separate suits, but unite or be made parties; and where separate suits are brought and these consolidated, defendant can only complain of the irregularity on the score of costs, being taxable with those incurred in but one proceeding prior to consolidation.   (Pp. 341, 342.)

2. **Chattel Mortgage—Description of Property—Selection by Mortgagee.**

A chattel mortgage on fifty cows with their calves out of a designated herd of one hundred, with power to the mortgagee to sell on default, gave him the right to select such cows from the larger number.   Oxsheer v. Watt, 91 Texas, 124.   But where no selection was made until the calves, ceasing to follow their dams, could not be identified, all claims upon these failed.   (P. 342.)

3. **Same—Innocent Purchaser.**

Such mortgage, implying the mortgagee's power of selection, was, when duly registered, notice of his rights to a purchaser from the mortgagor.   Rev. Stats., art. 3328. (P. 343.)

ON REHEARING.

4. **Practice on Appeal—Right Judgment for Wrong Reason.**

A judgment will not be reversed if, upon the whole case as presented, it is right, though an erroneous reason may be given for entering it.   (P. 344.)

5. **Same—Quashing Sequestration—Judgment Against Sureties in Replevin.**

A district court, after quashing sequestrations, rendered judgment for the value of the property sequestered (on which foreclosure of a chattel mortgage was sought) not only against the defendant, who had converted the property, but against the sureties on his replevin bonds.   The action of the Court of Civil Appeals in reversing the judgment against such sureties because they had been discharged by quashing the sequestration was reversed, and the judgment of the trial court against them affirmed, on the ground that the sequestrations should not have been quashed.   (P. 344.)

6. **Note—Assignment of Part—Separate Actions—Sequestration.**

The bringing of separate actions by the respective asignees of parts of the amount of a promissory note is an irregularity merely, and does not make void writs of sequestration issued in such suits prior to their consolidation.   (P. 345.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Hunt County.

Separate suits were brought against Avery et al. by Popper & Bro. and by Neyland & Co., assignees of respective portions of a note given by defendants to King and secured by chattel mortgage of which foreclosure was sought.   The actions were consolidated and defendant appealed from a judgment recovered against him.   Judgment was reformed and rendered and appellants obtained writ of error.

*Cobb & Avery,* for plaintiffs in error.—When the other sequestration proceedings are void and have been quashed, the replevy bonds growing out of them should also be quashed, and no judgment should be rendered

thereon against the principal or sureties therein; and especially is this true where the original suits were improperly brought and should have been dismissed, but were erroneously consolidated and the judgment was rendered on a new cause of action set up by amendment long after the suits were brought and sequestration proceedings had. Flynn v. Lynch,. 1 W. & W. C. C., 787; Sexton v. Hindman, 2 Willson C. C., 462.

A chattel mortgage on a certain number of cattle or horses out of a herd containing a large number of similar cattle and horses is invalid as against a judgment creditor of the mortgagor who has levied an execution thereon and sold same thereunder. Avery v. Popper, 34 S. W. Rep., 325; 5 Am. and Eng. Enc. of Law, 2 ed., pp. 962-964; Jones on Chat. Mort., 3 ed., secs. 53, 56, 178; 1 Cobbey on Chat. Mort., secs. 182, 183; Blakeley v. Patrick, 67 N. C., 40; Price v. McComas, 21 Neb., 195; Clark v. Voorhees, 36 Kan., 144; Stewart v. Jaques, 77 Ga., 365; Barrett v. Fisch, 76 Iowa, 553; Caldwell v. Trowbridge, 68 Iowa, 150; Richardson v. Lumber Co., 40 Mich., 203; Moss v. Sanger, 12 S. W. Rep., 616; Cleveland v. Williams, 29 Texas, 204.

*Craddock & Looney*, for defendants in error.—The mortgage as to the horses and mules was sufficient as between the original parties, King and Cook and wife. Lay v. Cardwell, 33 S. W. Rep., 595; Richardson v. Washington, 31 S. W. Rep., 614; 3 Wills. C. C., 507.

A chattel mortgage on a certain number of cattle or horses out of a herd containing a large number of similar cattle and horses is valid as against a judgment creditor who has levied an execution thereon and sold same thereunder and purchased at his own execution sale, crediting the amount of his bid on the execution, for two good reasons, viz: (1) Because such mortgage would be binding as between the original parties, and a creditor who purchases at his own execution sale and credits the amount of his bid on the execution, is not a purchaser for value and can occupy no better position than the mortgagors. (2) Because under such a mortgage, the mortgagees would at least have the implied right and power of election from the herd of the number of cattle and horses mentioned in the mortgage. Authorities sustaining first subdivision of proposition: 27 Texas, 606; 33 Texas, 773; 52 Texas, 12; 65 Texas, 179; 61 Texas, 648; 67 Texas, 659; 60 Texas, 240; 63 Texas, 512. Authorities sustaining second subdivision of proposition: Oxsheer v. Watt, 41 S. W. Rep., 466; 74 Texas, 469; 3 Wills. C. C., 507; 19 S. W. Rep., 517; Jones on Chat. Mort., secs. 54, 56, and p. 56; 9 S. W. Rep., 318; 15 S. W. Rep., 23; 14 S. W. Rep., 145; 12 S. W. Rep., 564.

Under the mortgage given by Cook and wife to King, the appellees had the legal right of election or selection to the extent of the fifty calves following the cows, and having done so by their suit and sequestration, they were entitled to have their lien foreclosed, and as appellant Avery had converted said property, appellees were entitled to judgment for the value thereof, being $534, with 6 per cent interest thereon.

BROWN, ASSOCIATE JUSTICE.—I. Popper & Bro. filed suit in the District Court of Hunt County on June 29, 1893, against J. H. and M. E. Cooke, W. W. Avery, and John M. Avery, to recover $775 of a note made by J. H. and M. E. Cooke to T. H. King, dated on May 26, 1891, due on the 1st of November, 1891, and interest thereon; and R. R. Neyland & Co., consisting of R. R. Neyland, filed suit in the same court on the same day against the said parties to recover of the said M. E. Cooke and J. H. Cooke the balance of the same note, and in each case the plaintiff sought to foreclose a mortgage upon property hereinafter described which was alleged to be in the possession of W. W. and J. M. Avery. The two suits were consolidated and the case tried before the judge without a jury, who rendered judgment in favor of the plaintiffs each for his proportion of the note and interest against J. H. and M. E. Cooke, and against J. M. Avery and his sureties on a replevy bond for the value of fifty cows, one bay mare colt, one bay horse colt, and one black mule colt. Upon appeal, the judgment was reformed and rendered in favor of the plaintiff for the amount adjudged by the court below and for the further sum of $534.

We copy the conclusions of fact of the Court of Civil Appeals as follows: "On May 26, 1891, J. H. Cooke and his wife, M. E. Cooke, executed and delivered to T. H. King their joint and several promissory notes for $1940, payable on the 1st day of November thereafter, with interest from January 1, 1891, at the rate of 12 per cent per annum. The note provided for 10 per cent attorney's fee, if placed in the hands of an attorney for collection. On the 10th day of April, 1892, the payee, T. H. King, transferred without recourse to I. Popper & Bro. an interest of $775 in said note, with interest thereon at the rate expressed in the note from its date. At the same time, said payee transferred without recourse the balance of said note, principal and interest, to R. R. Neyland, under the firm name of R. R. Neyland & Co. To secure the payment of said note, the makers thereof on May 26, 1891, executed and delivered to T. H. King their chattel mortgage, whereby they conveyed to him, among other property, fifty cows, with their spring calves (spring of 1891), cows branded 'COOK' on the left side and 'AK' on left hip, the calves at the time not branded; also one bay mare colt, one bay horse colt, and one black mule colt. This instrument was filed and duly registered as a chattel mortgage in the chattel mortgage register of Hunt County, Texas, in which the mortgagors resided and the property was situated, on May 30, 1891. On June 14, 1893, the United States marshal, by virtue of an execution issued on June 9, 1893, out of the United States Circuit Court of Dallas, on a judgment therein rendered in favor of W. W. Avery and against J. M. Cooke and sureties on his sequestration bond, but not against his wife, said sureties being O. Hail and William Hodges and J. M. Johnston, levied upon the property above described. The levy was made in Hunt County by direction of J. M. Avery, the attorney of W. W. Avery. All of said property was on June 28, 1893, by virtue of said execution, sold by the United States marshal in Hunt County, Texas, at public outcry, and was bid in by J. M. Avery in the

name of W. W. Avery, the amount of the bid being credited upon the execution, and all of the property was then delivered by the marshal to J. M. Avery, the attorney of W. W. Avery. On June 29, 1893, I. Popper & Bro. and R. R. Neyland & Co. filed separate suits against J. H. and M. E. Cooke and W. W. and J. M. Avery to recover of the makers of the note above described the amounts respectively due them by reason of the transfer of said note by the payee, and to foreclose the mortgage given to secure the note upon the property above described. The property was seized, while in possession of J. M. Avery, by virtue of writs of sequestration issued in these suits. After such seizure J. M. Avery re-plevied and resumed possession of the property, Charles C. Cobb and H. I. Phillips being the sureties on his replevy bond. After J. M. Avery re-plevied the property, he drove it out of Hunt County, Texas, and within a short time thereafter sold and disposed of all of it. He had none of said property on hand when this suit was tried in the court below, and would have been wholly unable to produce said property, or any part thereof, in satisfaction or partial satisfaction of the judgment rendered in said court. At the time the mortgage was executed to secure the note there were many more animals of the same description mingled with those upon which the mortgage was given, but the evidence is sufficient to show that just prior to the execution of the mortgage the animals embraced in it were pointed out to Mr. Neyland, who represented King in taking the mortgage security and drafting the mortgage. But the animals covered by the mortgage were not separated from the others of the same description with which they were mingled, nor was there such separation when the execution in favor of Neyland (Avery) was levied upon the property in controversy. The evidence is reasonably sufficient to show that the fifty head of cows described in the mortgage, as well as all others of like description mingled with them, were the separate property of Mrs. M. E. Cooke at the time the mortgage was executed, and continued to be her separate property until disposed of by Mr. Avery. The fifty calves were calved during the marriage of J. H. Cooke and wife, after the cows became the separate property of Mrs. M. E. Cooke, and were therefore when the mortgage was given, and the execution in favor of Avery levied, community property of J. H. and M. E. Cooke. The horses and mules involved in this suit were the offspring of the separate property of M. E. Cooke during her marriage with J. H. Cooke, and were likewise the community property of J. H. Cooke and wife at the time the mortgage was given and the writ of execution in favor of Avery levied upon same. From the view we take of the case, which will be shown in our conclusions of law, we do not deem it necessary to pass upon the question as to whether or not the deed of trust made on the 15th day of November, 1889, by J. H. Cooke to J. E. Steger, through which Mrs. M. E. Cooke claims the property mortgaged to secure the debt sued on, was fraudulent; but, if we deemed the question essential to a proper disposition of this case, we should find that the testimony is reasonably sufficient to show that such deed of trust was made by J. H. Cooke for the

purpose of securing his creditors, among whom was his wife, M. E. Cooke, and that the value of the property did not exceed the indebtedness it was transferred to secure. The finding of the trial court, which is sustained by the evidence, as to the value of the property in controversy, is as follows: 'Cows, $13 per head; horses, $50 per head; mules, $75 per head; seventeen 2-year-old past steers, $12 per head; and thirty-three 2-year-old past heifers, $10 per head'—aggregating $1384. Excluding the property sequestrated upon which the mortgage is sought to be foreclosed, the remainder of the property covered by the King mortgage was in June or July, 1893, worth $700. Since that time some of the stock not sequestrated have died and some strayed, so that those left on hand when the suit was tried in the court below did not exceed in value the sum of $200. When the suits which were consolidated were instituted, the appellant J. M. Avery resided in Dallas County and has resided in that county continuously ever since that time. The evidence is insufficient to show the mortgage given to secure the note sued on was fraudulent, or that the property exceeded in value the debt it was mortgaged to secure."

The judgment of the District Court quashing the writs of sequestration issued in the separate suits originally instituted by the plaintiffs in this case was not reversed by the Court of Civil Appeals, and no complaint is made in this court by the defendants in error of that action of the District Court. In considering all questions growing out of the quashing of those writs, that order will be treated as correctly rendered and the writs properly quashed.

When the District Court quashed the writs of sequestration in the original cases, the replevy bonds given by J. M. Avery and his sureties, Cobb and Phillips, fell with the writs upon which they were based and the District Court erred in entering judgment against Avery and his sureties on the replevy bonds. Mitchell v. Bloom, 91 Texas, 634.

At common law a part of a debt could not be assigned. Such assignment was void and passed no title or right whatever in the claim, and of course no action could be maintained by the assignee of a portion of a claim. But in equity such assignments are sustained, and it is now the established doctrine in this State that a claim may be assigned in parts to different persons, each of whom acquires a right to so much of the common fund and is entitled to maintain an action thereon against the debtor. Harris County v. Campbell, 68 Texas, 22; Clark v. Gillespie, 70 Texas, 513; Johnson v. Improvement Co., 88 Texas, 505. The proceedings in the separate suits instituted by Popper & Bro. and Neyland were not void in their beginning, but were improperly brought because they should have joined in one action, and failing to do so, Popper & Bro., who filed the first suit, should have made Neyland a defendant, or the latter might have intervened in that suit. The debtors, J. H. and M. E. Cooke, could have forced consolidation of the cases, but they made no objection, and we doubt if Avery had a right to complain. However, the most that he could claim is that he should not be charged with the costs

unnecessarily incurred by prosecuting two suits instead of one, and this protection he·has received by the judgment of the Court of Civil Appeals.

It is claimed that the mortgage sought to be foreclosed in this case is void, (1) because it was an attempt to mortgage a part of a larger number of cows without separating or designating the particular cows, and (2) if valid as between the parties, it is not good as against execution creditors.

The marks and brands designated the herd of the mortgagors as the group which included the cows and calves mortgaged, but being a part of a larger number of the same description and not having been separated nor identified, no lien attached to any particular animals in the herd. The question is, do the terms of the mortgage, construed in the light of the attending circumstances, confer upon the mortgagee any right in the herd of cattle? When the mortgage was made, the mortgagors owned in Hunt County more than 100 cows with calves following them, branded and marked as described in that instrument, which was known to the mortgagee, King, at the time, and the evidence and the findings of fact do not show that the mortgagors had any similar cattle outside of that herd. J. H. and M. E. Cooke executed the mortgage for the purpose of securing the payment of a debt owing by them to King, and, in order to accomplish that purpose, empowered King, in case of default in the payment of the debt, to sell the cows and calves at the courthouse door in Greenville, Hunt County, and to apply the proceeds to the payment of their indebtedness to him.

In the light of these facts, the mortgage must be interpreted by applying to it the following rules of law: 1. Its terms must be construed most strongly against the makers. 2. Effect must be given to the intent of the parties. 3. The law presumes that the mortgagors intended to confer some benefit upon the mortgagee. 4. Authority will be implied to do everything necessary to the execution of an express power.

As we have seen, no right attached under the mortgage to specific animals, nor did it give a lien upon an undivided interest in the herd. The power was given to sell certain cows and their calves, which could only be done by selecting them from the herd, and it being necessary to the execution of the express authority to sell, the law will imply the authority to take the fifty cows and calves from the larger number. Oxsheer v. Watt, 91 Texas, 124. The chattel mortgage was valid between the parties to it.

Upon default in payment, King, or the holders of the note, had the right to select from J. H. and M. E. Cooke's stock of cattle and sell fifty cows and calves corresponding to the description in the mortgage. If the right had been exercised while the calves of the spring of 1891 were following their mothers, the selection of the cow would have identified the calf. But, having failed to exercise the right until in the course of nature the dam and the young would separate, it has become impossible

to identify the calves, and all claim upon them had failed before Avery converted the stock.

The owner of property has the right to dispose of it as he may choose or to grant to another any right in it which is not inconsistent with his obligation to creditors, nor in violation of any law, and one who purchases property that has been so disposed of or incumbered, with notice of the right conferred, will take it subject to the burden fixed upon it. Kuhn v. Com. Council, 70 Mich., 535.

If the instrument in question had, in express terms, authorized T. H. King to select the fifty cows and calves from the herd belonging to Cooke and wife, we presume that no one would have questioned its validity as between the parties nor as to any person whose rights were subsequently acquired with notice, nor would there have been a doubt that it was a chattel mortgage. We think that any person who might read it, knowing of the herd of 100 cows in the same mark and brand, the property of the mortgagors, must know that the instrument conferred by implication the right to select from the herd the fifty cows. The implication of authority gives to the instrument the same legal effect as if it were expressed. It was "intended to operate as a lien upon the property named," and is within the terms of article 3328, Revised Statutes. The record of it constituted constructive notice to Avery.

We have examined the authorities cited by the plaintiffs in error and find none of them to be in conflict with Oxsheer v. Watt, cited above. The cases cited are distinguishable from that case by the absence from the former of the designation of a particular group of articles in which those described in the mortgage were included, and the want of either express or implied authority to make selection of the thing mortgaged from the larger number of things designated by its terms and attendant circumstances.

We have carefully examined the twenty-one assignments of error contained in the application for a writ of error, and have discussed those that we deem of importance sufficient to demand it. We do not feel called upon to enter upon the discussion of each of this large number of assignments, but will dispose of those not particularly mentioned by saying we find no material error in the acts of the court complained of.

By means of the replevy bond, Avery got possession of the property and converted it to his own use. He was liable for its value and the judgment against him was properly entered.

The District Court erred in rendering judgment against C. C. Cobb and H. I. Phillips and in taxing plaintiffs below with the costs of both original suits up to the time of consolidation, and the Court of Civil Appeals properly reversed the judgment as to that cost.

The Court of Civil Appeals errred in affirming the judgment of the District Court against Cobb and Phillips; also in reversing the judgment of the District Court which refused judgment for the value of the calves, and in rendering judgment against plaintiffs in error for their value. It is therefore ordered that the judgments of the District Court and of

the Court of Civil Appeals, as between Popper & Bro. and R. R. Neyland and J. M. Avery be reversed and set aside, and this court render the judgment which should have been rendered in the District Court, as follows: That I. Popper and E. Popper, composing the firm of I. Popper & Bro., and R. R. Neyland, composing the firm of R. R. Neyland & Co., recover of J. M. Avery the sum of $850, with 6 per cent interest per annum from November 23, 1897, with all costs which accrued in the District Court in cause No. 3406, entitled I. Popper & Bro. v. J. H. and M. E. Cooke et al., and in the consolidated case. It is further ordered, that C. C. Cobb and H. I. Phillips go hence without day; that plaintiffs, I. Popper & Bro. and R. R. Neyland pay the costs which accrued prior to consolidation in the District Court in case No. 3407, styled R. R. Neyland & Co. v. J. H. and M. E. Cooke et al., and all costs in this court and in the Court of Civil Appeals. The sum adjudged against J. M. Avery will be divided between I. Popper & Bro. and R. R. Neyland in the proportion of their judgments against J. H. Cooke in the District Court, and when collected, to be a credit upon those judgments.

Opinion delivered December 19, 1898.

ON MOTION FOR REHEARING.

BROWN, ASSOCIATE JUSTICE.—We devoted much time to the examination of the questions presented in the motions for rehearing in this case when it was under investigation, and we have again carefully examined the various assignments and find no error in our former opinion upon the points presented in the motion of John M. Avery, and it is therefore overruled. We do not feel called upon to discuss those questions further.

In our former opinion, the judgments of the District Court, which quashed the writs of sequestration issued in the original suits, were treated as subsisting and correct orders because they had not been set aside by the action of the Court of Civil Appeals. Upon further consideration of the matter as presented in the motion of I. Popper & Bro. and R. R. Neyland, we conclude that we were in error in so holding. It is the practice of this court not to reverse a judgment of the District Court or of the Court of Civil Appeals, if, upon the whole case as presented, the judgment is right, although an erroneous reason may be assigned for entering it. Applying this rule, we have examined the motions made to quash the several writs of sequestration, and conclude that the District Court erred in quashing them; the judgment sustaining the motions is reversed. The ground upon which the court acted, as stated by the defendant in error, which is not denied by plaintiff, was that the suits instituted by each of the appellants separately were brought without authority of law, and that the proceedings under them prior to the consolidation were void. We have held that they were not void but irregular, from which the conclusion must be reached that the writs of sequestration were valid.

The other grounds assigned in the motion of I. Popper & Bro. and R. R. Neyland are overruled.

If Popper & Bro. and R. R. Neyland had joined originally in the one suit, each one would have prosecuted it for the amount of money due to such party, and if the writs of sequestration had been sued out in such joint suit by the owners of the note, they must have been separate proceedings by each, because one of the parties could not be required to swear to the debt due to the other nor to give bond for damages caused by the prosecution of that claim. It follows that the costs which accrued from suing out the writs of sequestration must have been incurred if the suit had been brought jointly in the first instance by the owners of the note. The judgment of this court is erroneous in charging against I. Popper & Bro. and R. R. Neyland the costs which were occasioned by suing out and executing the writ of sequestration in one of these cases. It is therefore ordered that the judgment heretofore entered in this cause be set aside, and that judgment be now entered that I. Popper and E. Popper, composing the firm of I. Popper & Bro., and R. R. Neyland, composing the firm of R. R. Neyland & Co., recover of J. M. Avery and the sureties on his replevy bond, Charles C. Cobb and H. I. Phillips, the sum of $850, with 6 per cent interest per annum from November 23, 1897, with all costs which accrued in the District Court in cause number 3406, entitled I. Popper & Bro. v. J. H. and M. E. Cooke et al., and all costs which accrued in the consolidated case; also all costs which were occasioned by suing out and executing the writ of sequestration in case number 3407, styled R. R. Neyland v. J. H. and M. E. Cooke et al., and that the said I. Popper and E. Popper and R. R. Neyland pay all other costs accruing in number 3407 prior to the consolidation of the said causes, except cost of the sequestration, and that the said I. Popper and E. Popper and R. R. Neyland pay all costs in this court and in the Court of Civil Appeals. The sum adjudged against J. M. Avery will be divided between I. Popper & Bro. and R. R. Neyland in the proportion of their judgments against J. H. Cooke in the District Court, and, when collected, to be credited upon those judgments.

Opinion delivered January 30, 1899.

ON MOTION FOR REHEARING.

The motion of J. M. Avery, C. C. Cobb, and H. I. Phillips for rehearing is overruled, and they are adjudged to pay the cost of this motion. It appearing that an error was committed by this court in its last judgment in adjudging the costs of the Court of Civil Appeals against I. Popper & Bro. and R. R. Neyland, it is ordered that said judgment be so reformed that the costs of the Court of Civil Appeals be adjudged against J. M. Avery, C. C. Cobb, and H. I. Phillips.

*Reformed and rendered.*

Opinion delivered March 23, 1897.