CITIZENS' GUARANTY STATE BANK et al. v. JOHNSON. (No. 5976.) *

(Court of Civil Appeals of Texas. Austin. Jan. 15, 1919. Rehearing Denied April 9, 1919.)

1. CHATTEL MORTGAGES ⊂⊃178(2)—PLEADING—ISSUES—CONVERSION.

In an action for conversion against second mortgagee, where a petition fully set out plaintiff's rights as a mortgagee, and also as a purchaser of the mortgaged chattels, and there was a prayer for both general and special relief, and the petition was not excepted to because it asserted plaintiff's rights in both respects in same count, plaintiff was entitled to recover either as purchaser or mortgagee.

2. CHATTEL MORTGAGES ⊂⊃48, 177(1)—PROPERTY COVERED—SELECTION.

A chattel mortgage on half of a crop of cotton to be raised on certain land, mortgagor to have cotton ginned and baled, held to contemplate that lien was to cover and apply to one-half of bales of cotton that might be raised, and not an undivided one-half interest in crop, thus giving mortgagee right to elect which bales she should take or sell; and a second mortgagee, who had sequestered and sold the part of the crop before first mortgagee selected her bales, is liable in conversion to the extent of the full value of the part taken.

3. APPEAL AND ERROR ⊂⊃931(3)—PRESUMPTIONS—FINDINGS.

In an action for conversion, plaintiff claiming both as a mortgagee and as a purchaser, where court submitted case upon special issues, and defendant did not ask to have issue of title by purchase submitted to jury, and there was testimony tending to prove such title, it will be presumed that court found in plaintiff's favor upon that issue, under Rev. St. 1895, art. 1331, if necessary to sustain a judgment in favor of plaintiff.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by Mrs. Emma Johnson against the Citizens' Guaranty State Bank and others. Judgment for plaintiff, and defendants appeal. Affirmed.

N. A. Rector, of Austin, for appellants.
John A. Gracy and Hart & Patterson, all of Austin, for appellee.

KEY, C. J. Mrs. Emma Johnson brought this suit against the Citizens' Guaranty State Bank, J. W. Carlson, and Joe Jester for damages on account of the alleged conversion by the defendants of 10 bales of cotton, alleged to be the property of the plaintiff. She alleged that on January 3, 1916, Ed. Zar and his wife, Malvina Zar, executed a mortgage to her, which covered the cotton in question, and that thereafter Ed. Zar sold and delivered same to her in part payment of the mortgage debt.

The defendants filed a joint answer, consisting of a general denial and a special plea, asserting the bank's right to the cotton under a mortgage executed in April, 1916, by Ed. Zar, and under a bill of sale subsequently executed by Mrs. Malvina Zar, wife of Ed. Zar.

At the trial the court submitted the case to the jury upon one special issue, as follows:

"Question No. 1. Were the ten bales of cotton alleged to have been sequestrated and sold by the defendant Citizens' Guaranty State Bank of Manor, Texas, covered by and subject to the chattel mortgage executed on the 3d day of January, A. D. 1916, by Ed. Zar and wife, Malvina Zar, to the plaintiff, Mrs. Emma Johnson, and introduced in evidence in this case?"

By their verdict the jury gave an affirmative answer to that question, whereupon the court rendered judgment for the plaintiff for the value of the cotton on the day it was seized and levied upon under a writ of sequestration which the bank had caused to be issued against Ed. Zar, less $39.89 paid by the bank for ginning the cotton, and the bank has appealed.

Judgment was rendered to the effect that the plaintiff take nothing as against the other two defendants, and the bank is the only complainant in this court.

The first assignment of error complains of the refusal of the court to give a requested instruction directing the jury to find a general verdict in favor of the defendants. Under that assignment appellant submits but one proposition of law, which is that the plaintiff having sued for the conversion of her personal property, and not for the conversion of property upon which she had a lien, and having failed in her proof to show title in said property, defendants were entitled to a peremptory instruction in their favor.

In our opinion the proposition asserted is not sustained by the record, and therefore the charge referred to was properly refused.

[1] In the plaintiff's petition her rights as mortgagee were fully set out; and while it is true that she also alleged that Ed. Zar had sold and delivered to her the cotton in controversy in part payment of the mortgage debt, she prayed for both general and special relief, and, as the petition was not excepted to because it asserted her rights in both respects in the same count, she was entitled to recover, if the proof was sufficient, either as purchaser or mortgagee; also the plaintiff submitted testimony tending to sustain her plea of title by purchase from Ed. Zar, and for that reason the instruction referred to was properly refused.

[2] The other assignments in appellant's brief present substantially one question, and that is whether or not the fact that the plaintiff's mortgage was prior to the bank's mortgage conferred upon the plaintiff, as against the bank, any right to recover for more than the value of one-half of the cotton in controversy, which is a close question, and not entirely free from difficulty.

The material facts are as follows: On the 3d day of January, 1916, Ed. Zar and his wife, Malvina Zar, executed a mortgage to the plaintiff, from which we copy as follows:

" * * * We have this day and do by these presents grant, bargain, sell, convey, and mortgage unto her, the said Mrs. Emma Johnson, the entire crop of cotton raised on fifty (50) acres of land adjoining the fifty (50) acres rented by us to Victor Anderson, and one-half (½) of the entire crop of cotton for the year 1916, to be grown and cultivated on about 193 acres of our farm of four hundred and eighteen and ⅓ acres (418⅓), part of the Wayman F. Wells and Gordon C. Jennings survey, in said Travis county, Texas; and we hereby bind and obligate ourselves to work and cultivate in a farmer-like manner all said crops, and we hereby bind and obligate ourselves to gather and house the same in good time, order, and condition, and have the said cotton ginned and baled at Manor, Texas, and to deliver all of said cotton to the said Mrs. Emma Johnson in the town of Manor, Texas, on or by the 15th day of November, A. D. 1916.

"And in default of payment of said indebtedness herein mentioned on or by the 1st day of January, A. D. 1917, then the said Mrs. Emma Johnson, her agent or attorney, or the bearer of said indebtedness, is hereby authorized to take immediate possession of said crop hereby mortgaged, or so much thereof as they may deem necessary, and sell the same at either public or private sale. * * *"

On April 1, 1916, Ed. Zar also executed to the defendant bank a chattel mortgage upon certain live stock, and upon a portion of his crop described as follows:

"Also the first 10 bales of cotton raised by me on my farm 2½ southeast of Manor, Tex., which represents my half not already mortgaged. * * *"

The testimony of C. W. Bickley, who was a witness for the bank, justifies the finding that, during the year 1916, Ed. Zar raised at least 32 bales of cotton on the farm referred to, 27 of which were probably raised on the 198 acres, and 5 upon the 50 acres, referred to as adjoining the 50 acres rented to Victor Anderson.

The plaintiff submitted testimony tending to show that in November, 1916, Ed. Zar sold the cotton in question to the plaintiff in part payment of her debt secured by the mortgage thereon. Thereafter Zar caused the cotton to be carried to the town of Manor, and left in a cotton yard; and on January 4, 1917, the bank brought suit in the court which tried this case against Ed. Zar, seeking to recover upon a promissory note for $1,595, and also to foreclose its chattel mortgage hereinbefore referred to. The bank also sued out a writ of sequestration, under which the cotton in question was seized by an officer; whereupon the bank gave a sequestration bond, obtained possession of the property, and sold and appropriated it to its own use; and thereafter the plaintiff, Mrs. Johnson, brought this suit against the bank and two of its officers and agents, which, as heretofore stated, resulted in a judgment for Mrs. Johnson against the bank, and the latter has appealed. There was no controversy as to the value of the cotton at the time the bank appropriated it.

In this court it is earnestly and ably insisted by appellant's counsel that the date of the respective mortgages is of no consequence; that the legal effect of the two instruments is this: that Mrs. Johnson had a mortgage on an undivided half interest in the ten bales of cotton in controversy, and that the bank had a mortgage of equal dignity and force upon the other undivided half interest; and therefore Mrs. Johnson should not have recovered, as she did, the full market value of the cotton when it was appropriated by the bank, but only half of that sum. That argument is based upon the assumption that Mrs. Johnson's mortgage only conveyed to her an undivided one-half interest in the property described in the mortgage. Of course that cannot be true, nor is it so contended, as to the cotton that was raised on the 50 acres adjoining the 50 acres rented to Victor Anderson, because by its very terms the mortgage covered and included all the cotton raised upon that particular portion of the farm. As to that raised upon the remainder of the farm, did the plaintiff's mortgage convey to her only an undivided one-half interest? or was it intended thereby to convey to her one-half of the

bales of cotton after the latter had been ginned and baled? We have reached the conclusion that the latter construction should be placed upon the instrument, because it is not, in terms, restricted to an undivided one-half, and it is stipulated in the mortgage that the mortgagor shall deliver to the mortgagee the cotton covered by the mortgage in the town of Manor, Tex., on or by the 15th day of November, 1916. The mortgage also contains the further stipulation that, in default of payment of the debt, the mortgagee, her agent or attorney, is authorized to take immediate possession of the cotton, and sell the same at either public or private sale. These stipulations indicate that it was contemplated by the parties that the mortgage was to cover and apply to one-half of the bales of cotton that might be raised on that portion of the farm. In fact, if this construction is not adopted it would have been impractical, if not impossible, to comply with these provisions of the mortgage; and if doubt exists as to its proper construction, inasmuch as the parties to the mortgage, as shown by the testimony of Mrs. Johnson, seem to have placed that construction upon it, we feel justified in the conclusion we have reached.

This construction of the plaintiff's mortgage brings the case within the doctrine of election by the mortgagee announced by our Supreme Court in Avery v. Popper & Bro., 92 Tex. 342, 48 S. W. 574, 71 Am. St. Rep. 849, from which we quote as follows:

"It is claimed that the mortgage sought to be foreclosed in this case is void (1) because it was an attempt to mortgage a part of a larger number of cows without separating or designating the particular cows, and, (2) if valid as between the parties, it is not good as against execution creditors.

"The marks and brands designated the herd of the mortgagors as the group which included the cows and calves mortgaged, but being a part of a larger number of the same description, and not having been separated nor identified, no lien attached to any particular animals in the herd. The question is, do the terms of the mortgage, construed in the light of the attending circumstances, confer upon the mortgagee any right in the herd of cattle? When the mortgage was made the mortgagors owned in Hunt county more than 100 cows with calves following them, branded and marked as described in that instrument, which was known to the mortgagee, King, at the time, and the evidence and the findings of fact do not show that the mortgagors had any similar cattle outside of that herd. J. H. and M. E. Cooke executed the mortgage for the purpose of securing the payment of a debt owing by them to King, and, in order to accomplish that purpose, empowered King, in case of default in the payment of the debt, to sell the cows and calves at the courthouse door in Greenville, Hunt county, and to apply the proceeds to the payment of their indebtedness to him.

"In the light of these facts, the mortgage must be interpreted by applying to it the following rules of law: (1) Its terms must be construed most strongly against the makers. (2) Effect must be given to the intent of the parties. (3) The law presumes that the mortgagors intended to confer some benefit upon the mortgagee. (4) Authority will be implied to do everything necessary to the execution of an express power.

"As we have seen, no right attached under the mortgage to specific animals, nor did it give a lien upon an undivided interest in the herd. The power was given to sell certain cows and their calves, which could only be done by selecting them from the herd, and, it being necessary to the execution of the express authority to sell, the law will imply the authority to take the 50 cows and calves from the larger number. Oxsheer v. Watt, 91 Tex. 124 [41 S. W. 466, 66 Am. St. Rep. 863]. The chattel mortgage was valid between the parties to it.

"Upon default in payment, King, or the holders of the note, had the right to select from J. H. and M. E. Cooke's stock of cattle and sell 50 cows and calves corresponding to the description in the mortgage. If the right had been exercised while the calves of the spring of 1891 were following their mothers, the selection of the cow would have identified the calf. But, having failed to exercise the right until in the course of nature the dam and the young would separate, it has become impossible to identify the calves, and all claim upon them had failed before Avery converted the stock.

"The owner of property has the right to dispose of it as he may choose, or to grant to another any right in it which is not inconsistent with his obligation to creditors, nor in violation of any law, and one who purchases property that has been so disposed of or incumbered, with notice of the right conferred, will take it subject to the burden fixed upon it. Kuhn v. Com. Council, 70 Mich. 535 [38 N. W. 470].

"If the instrument in question had, in express terms, authorized T. H. King to select the fifty cows and calves from the herd belonging to Cooke and wife, we presume that no one would have questioned its validity as between the parties nor as to any person whose rights were subsequently acquired with notice, nor would there have been a doubt that it was a chattel mortgage. We think that any person who might read it, knowing of the herd of 100 cows in the same mark and brand, the property of the mortgagors, must know that the instrument conferred by implication the right to select from the herd the 50 cows. The implication of authority gives to the instrument the same legal effect as if it were expressed. It was 'intended to operate as a lien upon the property named,' and is within the terms of article 3328, Revised Statutes. The record of it constituted constructive notice to Avery."

[3] The undisputed proof shows that the plaintiff had received upon her mortgage debt the proceeds of only 2 other bales of cotton, whereas she was entitled to at least 16 bales; and, upon authority of the case just cited, inasmuch as her mortgage was duly recorded, and as the bank's mortgage disclosed upon its face the existence of a prior mortgage, we hold that she has the same right of election against the bank that she had as against the mortgagors; and, therefore, if she had not already purchased the property from Ed. Zar in satisfaction, pro tanto, of her mortgage debt, she had the right to recover from the bank the value of the cotton in controversy, upon the theory that the bank had converted it to its own use, and put it beyond the reach of her mortgage lien. However, as the court submitted the case to the jury upon special issues, and as appellant did not ask to have the issue of title by purchase submitted to the jury, and as there was testimony tending to prove such title, if it be necessary to sustain the judgment, we must presume that the court found in plaintiff's favor upon that issue. Article 1331, Revised Statutes.

No reversible error has been shown, and therefore the judgment is affirmed.

Affirmed.