**CITIZENS' NAT. BANK OF ENNIS v. FIRST GUARANTY STATE BANK OF PALMER. (No. 1262.)**

(Court of Civil Appeals of Texas. Beaumont. July 8, 1925. Rehearing Denied Oct. 14, 1925.)

**1. Chattel mortgages ⬅48—Description of cotton in chattel mortgage as 20 B/C held sufficient.**

In action for conversion of cotton mortgaged to plaintiff, description in mortgage as 20 B/C was *held* sufficient to constitute notice of mortgagee's lien.

**2. Chattel mortgages ⬅48—Under mortgage covering 20 bales of cotton, mortgagee may select any 20 bales.**

Where mortgage covered 20 bales of cotton to be raised during year, mortgagee had right to select any 20 bales and ask for foreclosure thereon.

**3. Trial ⬅350(4)—Question as to meaning of 20 B/C as used in cotton mortgage held not for jury.**

In mortgagee's action for conversion of 20 bales of cotton described in mortgage as 20 B/C, it was not error to refuse to submit to jury question as to what such characters meant.

**4. Chattel mortgages ⬅229(3)—Testimony showing actual knowledge of mortgage lien by person converting mortgaged property held admissible.**

In action for conversion of cotton, testimony of witness of conversation with defendant, showing that witness gave defendant actual notice of mortgagee's lien, *held* admissible.

**5. Chattel mortgages ⬅229(3) — Testimony of defendant, in action for conversion of mortgaged cotton, that he relied on statement of owner that no one had interest in property, held properly excluded.**

In action for conversion of cotton mortgaged to plaintiff, refusal to allow defendant to testify that he relied on statement of owner, that no one else had interest in cotton, was proper, where mortgage was filed for record, thus giving constructive notice.

**6. Chattel mortgages ⬅225(2)—Owner of property cannot defeat mortgagee's lien by assuming control of property.**

In action for conversion of mortgaged cotton, fact that owner had assumed control of cotton and directed defendant to take possession would be immaterial, since owner could not defeat mortgagee's lien by his act.

Appeal from District Court, Ellis County; W. L. Harding, Judge.

Suit by the First Guaranty State bank of Palmer against the Citizens' National Bank of Ennis and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Sharp & Gray, of Ennis, for appellant.

G. C. Groce and Farrar & Kemble, all of Waxahachie, for appellee.

HIGHTOWER, C. J. The appellee, First Guaranty State Bank of Palmer, Tex., filed this suit in the district court of Ellis county against A. J. Davis, J. Baldridge, and the Citizens' National Bank of Ennis, Tex., as defendants, alleging that on the 14th day of February, 1920, Davis and one T. B. Truitt executed their note in favor of appellee for the sum of $3,599, due November 1, 1920, and bearing interest at the rate of 10 per cent. per annum from date, and providing for the usual 10 per cent. attorneys' fees. It was alleged that, after allowing proper credits as payments made on this note, there was a balance due appellee of $1,650, for which amount appellee prayed judgment against Davis as one of the defendants.

It was then alleged by the appellee that Truitt was dead, and that his estate was insolvent, and that neither his administrator nor his heirs were made parties, and that Davis was a surety on the note and Truitt the principal. Appellee then alleged that on February 14, 1920, Truitt executed and delivered to appellee a chattel mortgage on "20 B/C," meaning and intending to mean "20 bales of cotton," to be raised on the farm or farms of Truitt in Ellis county, consisting of 350 acres of land, situated about one mile northeast of Bristol, in Ellis county, during the year 1920; that thereafter during said year there was raised on the farm or farms belonging to Truitt 32 bales of cotton, in which his tenants owned a one-half interest, to wit, 16 bales, to which the mortgage attached and constituted a lien securing the payment of said note, and that appellee had elected to sue for the interest that Truitt had in the 32 bales of cotton; that the mortgage was duly recorded on February 19, 1920; and that the defendants Baldridge and the Citizens' National Bank had knowledge of such lien, or at least had legal notice at the time they converted the cotton.

Appellee then alleged that 32 bales of the cotton was gathered in the fall of 1920, and that the tickets for the cotton were placed with Baldridge and the Citizens' National Bank, and that they took charge of the cotton and converted the same to their own use and benefit, to plaintiff's damage in the sum of $1,600, that Baldridge and the Citizens' National Bank sold the 32 bales of cotton and converted the proceeds thereof, and that appellee was entitled to judgment against the defendant bank, of which he was president.

Baldridge and the Citizens' National Bank answered by general and special exceptions, and by general and special answer, alleging, substantially that plaintiff had no valid mortgage on any of the cotton; that its claimed mortgage was so vague and indefinite as to description of the property covered that same could not constitute a valid and binding lien upon the cotton; that Truitt owed the Citizens' National Bank considerable money, and that it had a lien upon certain mules and other property described in a mortgage, and that, for the purpose of getting the bank's note extended, Truitt requested the Citizens' National Bank to extend same, and stated to that bank that he would put up certain bales of cotton as collateral security to his note, and that, in consequence thereof, the Citizens' National Bank did extend the note, and that Truitt stated at the time that the cotton was clear of any claim or incumbrance, and that he was authorized to hypothecate same as collateral to secure the bank's debt. Baldridge and the bank further answered that the cotton was sold at the instance and request and under the supervision of Truitt, and that whatever was done was done at his instance and request and under his supervision, and that the proceeds of the sale of the cotton was not sufficient to liquidate the amount of the indebtedness that Truitt owed the Citizens' National Bank, and that that bank and Baldridge were not guilty of conversion of any of the cotton. The appellant bank and Baldridge further alleged that, if plaintiff had a valid lien against the cotton, nevertheless, on account of the indefinite description given in the mortgage, appellee would only have a pro rata part of same against all of the cotton raised by Truitt for the year 1920, and that, if the Citizens' National Bank and Baldridge were responsible at all to appellee as for the conversion of any of the cotton, it would be only a pro rata part of the 20 bales as it bears to the entire number of bales of cotton raised by Truitt during the year for which the mortgage was given.

The defendant Davis adopted the pleadings of the appellee. The case was submitted to the jury upon special issues, and upon their answers thereto judgment was rendered in favor of the First Guaranty State Bank of Palmer, the plaintiff, against Davis, in the sum of $1,752.15; and the court expressly found, as recited in the judgment, that one-half interest in the 32 bales of cotton that were converted by the Citizens' National belonged to Truitt, and that appellee's mortgage attached to this 16 bales, and judgment was rendered in favor of appellee against the Citizens' National Bank of Ennis in the sum of $1,335.50, with interest at the legal rate. It was further provided in the judgment that, when the amount of the judgment against the Citizens' National Bank in favor of the appellee had been collected, the same would be credited upon the judgment rendered in favor of appellee against Davis, and that Davis would be subrogated to the rights of appellee as against the Citizens' National Bank of Ennis as to any part of appellee's

judgment remaining unpaid. After its motion for new trial had been presented and overruled, the Citizens' National Bank of Ennis prosecuted this appeal.

It is appellant's first contention, in substance, that the description of the property covered by the mortgage sought to be foreclosed is so vague and indefinite that it did not constitute a lien upon any property, and was not enforceable against appellants as sought by the appellee. The description contained in the mortgage executed by Truitt in favor of appellee was as follows:

"Twenty B/C raised on my farm or farms in the year 1920, said land consisting of 350 acres and situated about 1 mile N. E. of Bristol, Tex."

In keeping with appellant's contention in this connection, it requested the trial court to peremptorily instruct a verdict in its favor, which the court refused, and now appellant insists that that action was error.

It is appellee's contention in this connection that the description contained in the mortgage covering the cotton was a sufficient description, since the number of bales mortgaged were stated, the year in which the cotton was to be raised was stated, and the land upon which it was to be raised was definitely stated and located in the mortgage, and that its registration, which was forthwith had upon its execution, gave notice to appellant of appellee's lien on the cotton.

The only possible objection that appellant could make to the description of the cotton intended to be mortgaged was because of the use of the abbreviation "20 B/C," instead of writing out in full "20 bales of cotton."

Mr. Baldridge, who was president of appellant bank, testified, substantially, that during the year 1920 and 1921, in his capacity as president of the bank, he took over the receipts from Truitt of the cotton charged to have been converted by appellee, and that he had same sold and applied the proceeds upon a debt owed by Truitt to appellant. In this connection, Mr. Baldridge said:

"I had known Mr. T. B. Truitt for many years, and had a great many business dealings with him, and knew that he was a farmer out in the Bristol community, and that he owned a farm out there, and I knew about the location of the farm near Bristol. I have seen farm lands around Bristol, but don't know that I ever saw the particular land that Mr. Truitt owned. I knew all this at the time I took the cotton tickets from Mr. Truitt, and I had reason to believe that the cotton covered by these tickets was raised on his farm out there near Bristol."

In explaining what meaning he attributed to the abbreviation "20 B/C," Mr. Baldridge further testified as follows:

"I think the expression used in the mortgage in this case, viz. '20 B/C' does not have universally accepted meaning in a mortgage, but that it would put a conservative man on notice as to what that would mean."

He further stated:

"I don't think I would reach the conclusion that it meant '20 bales of cotton,' but I would make inquiry as to what that meant."

And further:

"But I expect the first thing I would think of that 'B/C' meaning, would be bales of cotton among cotton men; they abbreviate 'bales of cotton' that way in account sales, but I don't know that I ever saw a mortgage with cotton written that way before. I mean by that 'B/C' in a mortgage is unusual, and that it is indefinite and in writing a mortgage I would not write it that way. But it is a recognized abbreviation as I say among cotton men. Also the abbreviation 'N. E.' I presume would mean northeast, especially in a description of land."

The defendant Davis, while a witness on the stand, testified that he lived at Bristol in Ellis county, and was engaged, in the year 1920, in grocery and mercantile business, and operated a cotton gin, and that he was familiar with the abbreviation commonly used in business matters when placed in a note or mortgage, and that the universally accepted meaning of the abbreviation "B/C," when so used, is "bales of cotton," and is generally and customarily used in our markets here. Sometimes the characters "B/C" are used, and sometimes a straight dash, thus "B–C" is used, either one meaning "bales of cotton," and typewriters have both characters separating the two letters. Likewise, the abbreviation "N. E." is generally used meaning "northeast," and to save writing out the words "north" and "east" are recognized for the words "northeast." It was further shown, without dispute, that the appellant bank, or Mr. Baldridge acting for it, sold the cotton, with the conversion of which it is charged, on November 26, 1921.

Mr. Baldridge also, while a witness on the stand, admitted that he received a letter from appellee's attorney, J. T. Gill, on September 6, 1921, two months before he had sold the cotton, which read as follows:

"We understand that you [Citizens' National Bank of Ennis] hold the tickets for the cotton of T. B. Truitt, and if I am looking at the law properly correct, if you sell this cotton, the First Guaranty State Bank of Palmer has a case against you for conversion of the cotton."

Mr. Baldridge further admitted, while on the stand, that he received a letter dated October 21st, more than a month before he sold the cotton, from Mr. Truitt, stating that his renters owned one-half of the cotton in controversy, and that the Palmer Bank claimed a lien on the other half, but that he wanted it sold while the price was up, and the "other one-half can be held subject to adjustment be-

tween yourself and the Palmer Bank." Mr. Baldridge admitted that this letter from Truitt was received by him before he, acting for the bank, sold the cotton, and he knew that the letter was with reference to the same cotton for which his bank held the tickets.

[1] Without discussing the authorities upon which we base the conclusion, we hold that the description of the cotton as contained in the chattel mortgage executed by Truitt to the appellee bank was sufficient, and that the appellee bank had a valid and subsisting mortgage, which was forthwith recorded, and constituted constructive notice to appellant bank, and Mr. Baldridge, its president, as to appellee's rights in the cotton. Not only so, but, if we understand this record, Mr. Baldridge, as president of the appellant bank, had actual knowledge of appellee's lien on the cotton, which he, acting for the bank, converted. We think that the following authorities uphold the conclusion as to the sufficiency of the description contained in appellee's mortgage: Avery et al. v. Popper et al., 92 Tex. 337, 48 S. W. 572, 49 S. W. 219, 50 S. W. 122, 71 Am. St. Rep. 849; Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 466, 66 Am. St. Rep. 863; Houssels v. Coe (Tex. Civ. App.) 159 S. W. 864; Citizens' Guaranty State Bank v. Johnson (Tex. Civ. App.) 211 S. W. 271; Matthews v. Melasky (Tex. Civ. App.) 240 S. W. 641. The contention of appellant that the description of the cotton contained in the mortgage was insufficient to constitute notice of appellee's claimed lien is overruled.

[2] It is next contended by appellant that, even if appellee had a valid mortgage lien against 20 bales of cotton to be grown by Truitt during the year 1920, nevertheless the testimony in the case showed that Truitt had raised about 100 bales of cotton upon his farm, consisting of 300 acres of land described in the mortgage, during the year 1920, and that the description in the mortgage was so vague and uncertain that, if enforceable at all, it was not enforceable on any certain number of bales of cotton, and that it was material to show and have the jury to find how many bales of cotton had been raised by Truitt and his tenants during said year, so that the proper judgment could be rendered in this case, which would be upon a pro rata basis of 20 bales to the entire amount grown by Truitt and his tenants for the year 1920, and that the trial court should have given the jury its specially requested issue No. 4. That issue was to draw from the jury its answer as to how many bales of cotton Truitt and his tenants raised on his farm during the year 1920. The court declined to give the issue, holding it immaterial, and we think he was correct. As we have concluded above, appellee showed a valid mortgage on 20 bales of cotton, as claimed in his petition, which was grown on Truitt's farm, about a mile northeast of Bristol, 'in Ellis county,

during the year 1920. That mortgage, as we have stated, was forthwith filed for record in the proper office, and constituted notice to the appellant bank in this case and to its president, who acted for it in the sale of the cotton, of appellee's right in said cotton under the mortgage. Appellee, as we understand the decisions of the Supreme Court of this state, had the right to select or elect which bales of cotton, up to the number of 20, were covered by his lien, and to ask for foreclosure thereon, as he did. It is too clear for argument, as we think from this record, that Mr. Baldridge, acting as president of appellant bank, not only had constructive notice of the valid mortgage lien in favor of appellee covering the cotton as claimed by him, but he had actual knowledge as well at the time he persisted in selling the cotton and paying his bank's debt out of the proceeds. It was not open to his bank to complain that appellee was permitted to elect or select the cotton upon which it would ask foreclosure of the lien in this case. Avery v. Popper, 92 Tex. 337, 48 S. W. 572, 49 S. W. 219, 50 S. W. 122, 71 Am. St. Rep. 849; Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 466, 66 Am. St. Rep. 863; Bank v. Johnson (Tex. Civ. App.) 211 S. W. 271.

[3] Appellant contends that the trial court was in error in refusing to submit its requested issue No. 5 to the jury. The specific contention in this connection is that the evidence made it a question of fact as to what the characters "20 B/C" contained in the mortgage meant. We disagree with this contention. We think it is beyond all dispute that the characters "20 B/C," as used in the mortgage, meant "20 bales of cotton." It is not only the testimony of Mr. Davis that such was the universal meaning of those characters, but we think that it is clear from the testimony of Mr. Baldridge himself that he knew the meaning of those character was "20 bales of cotton."

The next proposition which is submitted under the sixth assignment of error has, in effect, been already disposed of by us, and so has the proposition under the eighth assignment of error.

The proposition under the tenth assignment of error is, in substance, that the court should have sustained appellant's objection to the introduction in evidence of the chattel mortgage sought to be foreclosed, on the ground that the same was void for lack of description. We have already concluded that the description was sufficient, and that proposition is overruled.

The court did not permit the witness Davis, as complained of by the eleventh assignment of error, to construe the mortgage for the jury. The witness was only permitted to state what the universal meaning of the characters or abbreviation "B/C" was when contained in a mortgage of this character. The assignment is overruled.

[4] Nor did the court commit error, as contended under the twelfth assignment, in permitting the witness Davis to detail a conversation between himself and Mr. Baldridge, acting as president for the appellant bank, with reference to this cotton prior to the sale and conversion of it by the appellant bank. It is clear from the testimony of Mr. Davis that in that conversation he notified (that is, gave actual knowledge to) Mr. Baldridge of appellee's lien on the cotton in question. It was admissible for that purpose, if no other.

[5] It is claimed under the thirteenth assignment that the court committed error in refusing to permit Mr. Baldridge to testify that he did not know that any one else had any interest in the cotton in controversy, and that in selling the cotton he relied upon the statement of Mr. Truitt that no one else had any interest in the cotton. The court did not commit prejudicial error in so ruling. As we have stated, when appellee's chattel mortgage was duly filed for record, it constituted constructive notice to Mr. Baldridge, as president of appellant bank, and to the bank itself, of appellee's rights in said cotton.

[6] We overrule the further contention of appellant that the court was in error in not submitting an issue to the jury as to whether or not Truitt assumed control over the 32 bales of cotton that were sold by appellant bank, and as to whether or not he directed the appellant bank to sell the cotton and to apply the proceeds thereof to the payment of its debt. We think the matter would have been entirely immaterial, for the reason that Mr. Truitt could not have destroyed appellee's lien on the cotton by directing appellant bank to sell it and apply the proceeds thereof to the payment of its own debt against Truitt.

What we have said, in effect, disposes of appellant's assignments, and they are all overruled.

The judgment of the trial court is affirmed.