Howard SIEGLER, M.D., Appellant,

v.

Noble C. GINTHER, Sr., Appellee.

No. 01–83–00559–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 1, 1984.

Alice M. Giessel, Talbert, Giessel & Stone, Houston, for appellant.

Ronald D. Secrest, Fulbright & Jaworski, Houston, for appellee.

Before EVANS, C.J., and LEVY and DOYLE, JJ.

## OPINION

LEVY, Justice.

This is an appeal from a judgment granted in favor of appellee for $10,000, plus interest, an amount found to be appellant's proportionate amount of liability on a $50,000 promissory note.

In August, 1977, Dr. Howard Siegler, appellant, and four members of the Ginther family including Noble Ginther, Sr., appellee, executed a promissory note for $50,000, payable to South Loop National Bank (hereinafter referred to as "the Bank"). The purpose of the bank loan was to set up a fund for campaign expenses to be used by Noble Ginther, Jr., as a candidate for mayor of the City of Houston.

The note stated in pertinent part:

THE UNDERSIGNED (hereinafter called "Debtor"), jointly and severally if more than one, in consideration of the advancement by South Loop National Bank (hereinafter called "Bank") of the "amount financed" shown below, promise(s) to pay to the order of the Bank at its offices at 9701 South Main Street, Houston, Harris County, Texas, in lawful money of the United States of America, the sum of: ___ Fifty thousand and no/100 ___ DOLLARS ....

The note was absolute in its terms and contained no special conditions or any relaxation of the payment obligation of any of the five co-makers. On October 25, 1977, the note became due and the Bank demanded payment. At that time, Noble Ginther, Sr., paid one-half of the note on behalf of the Ginther family. Appellant did not make any payments on the loan.

In January, 1978, the Bank filed suit against appellant for the entire $50,000 debt. In response, appellant denied that he was solely responsible for the $50,000 and filed a cross-action against appellee and the other members of the Ginther family who had signed the note, alleging that they had fraudulently induced appellant to sign the note by promising that the note would be retired by using one-half of the campaign contributions. In a third-party action against Noble Ginther, Jr., appellant further alleged that the representation was made specifically to induce appellant to sign the note and that Noble Ginther, Jr., should indemnify appellant in the event of a judgment against him.

In September, 1978, appellee paid the remaining balance on the promissory note. Thereafter, the Bank assigned and transferred all of its rights under the note to appellee.

In January, 1979, the Ginthers filed a third-party counter-claim against Dr. Siegler, seeking to recover one-half of the amount of the note, alleging that they were then the owners of the note, and in the alternative seeking contribution for one-half of the money paid to the Bank, together with costs, attorney's fees, and interest as provided by law.

In January, 1981, the Ginthers and appellant agreed to sever the Bank in the action against appellant and the Bank was dismissed from the cause of action.

Based on the jury's answers to the special issues, the trial court determined that appellant was liable for 1/5 of $50,000 (or $10,000). In three points of error, appellant contends that the trial court erred in entering judgment in favor of appellee because the jury's answers to special issues one and three showed appellant had contingent accommodation status and entitled appellee only to a take-nothing judgment.

In response to special issues one and three, the jury answered as follows:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Dr. Howard Siegler and the Ginther family entered into an agreement whereby all would sign the note in question and half of all monies received in the campaign would be used to retire the note in question?

Answer: "We do" or "We do not."

To which the jury answered: "We do."

## SPECIAL ISSUE NO. 3

Was sufficient money received in the campaign to pay the note in question in accordance with such agreement?

Answer: "We do" or "We do not."

To which the jury answered: "We do."

The jury's response to these special issues establish that the appellant and the Ginther family agreed that half of all monies received in the campaign would be used to retire the debt, and that the campaign had received sufficient money to pay the note in accordance with such agreement. Appellant contends that these findings prove his "contingent" accommodation maker status, and thereby resolve him of liability.

Although appellant presents a novel argument, we cannot agree that the jury's answers establish that he was an accommodation maker because he failed to submit a special issue or obtain a finding on an essential element required to prove such status. In *Darden v. Harrison*, 511 S.W.2d 925, 928 (Tex.1974), the Texas Supreme Court held that a party claiming accommodation status "must prove that the party claimed to be accommodated received the signature of the surety *for the sole purpose of obtaining credit thereby*, under an agreement that the accommodated party is principally responsible for payment at maturity, or that the instrument was executed for a limited purpose." (Emphasis supplied).

■ In the instant case, there were no special issues submitted which required the jury to determine whether appellee had obtained appellant's signature on the note for the *sole* purpose of obtaining credit. Consequently, the omitted issue must be deemed found in support of the judgment as long as there is evidence to support the judgment. *See City of Lubbock v. Onley*, 498 S.W.2d 429, 431 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Connell v. Rosales*, 419 S.W.2d 673, 677 (Tex.Civ.App.—Texarkana 1967, no writ); Tex.R.Civ.P. 279. Here, the trial court's implied rejection of appellant's "contingent accommodation maker" defense is supported by the testimony of both appellee and appellant. Both parties testified that appellant did not sign the note for the sole purpose of allowing the Ginthers to obtain credit. Therefore, this court may not find, as urged by appellant, that the trial court erred in ignoring appellant's "contingent accommodation maker" defense.

However, we agree with appellant that the jury's findings establish an oral agreement between appellant and appellee which induced appellant to sign the note. In response to special issues six and seven, the jury found that the entire Ginther family's promise to use one-half of the campaign funds to retire the note was made to induce appellant's signature on the note, and that appellant signed the note in reliance on such promise. The jury also found that the campaign received sufficient funds to retire the note in accordance with appellee's promise.

■ An independent parol agreement, made as an inducement to the making of a written contract, may be proven and enforced, though not referred to in the written contract. *Leyendecker v. Strange*, 204 S.W.2d 845, 847 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.). *See e.g., Sherrod v. Barley*, 580 S.W.2d 24, 28 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Thus, it has been held that parol or extrinsic evidence is admissible to show the true or additional consideration for the ultimate written agreement. *See Anderson v. McRae*, 495 S.W.2d 351, 360 (Tex.Civ.App.—Texarkana 1973, no writ); *Smith v. Pulliam*, 388 S.W.2d 329 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n.r.e.).

Appellee contends that the independent parol agreement may not be enforced against a transferee of a negotiable instrument, who, as in the instant case, acquired the status of "holder in due course" from the transferor. *See* Tex.Bus. & Com.Code sec. 3.201(a); 3.603(b).

■ Under sec. 3.603(b), the surrender of an instrument by the holder to any party making full payment in satisfaction of the debt, gives such party the rights of a transferee. Under sec. 3.201, a transferee acquires such rights as the transferor had, unless the transferee was a party to fraud or a prior holder with notice of a defense or claim against it.

■ However, under the facts of this case, appellee incorrectly refers to himself as a transferee with all the rights of a holder in due course against appellant. Texas common law, and not the Texas Business and Commerce Code, establishes the general liability between co-makers on a note, where one co-maker satisfies the entire debt on the note. If neither party establishes suretyship status, the paying co-maker has a cause of action against the nonpaying co-maker based on an implied promise to reimburse the paying co-maker for his share of their joint and several liability. *Caldwell v. Stevenson*, 567 S.W.2d 278 (Tex.Civ.App.—Austin 1978, no writ); *Dittberner v. Bell*, 558 S.W.2d 527, 534 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Charles v. Charles*, 478 S.W.2d 133 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

■ The cause of action asserted herein is founded, not primarily upon the note itself, but upon the implied promise to pay contribution. In *Charles, supra,* and *Caldwell, supra,* the court had before it notes signed before the Texas Business and Commerce Code became operative. The Code, however, does not change the law of the surety-principal-creditor relationship. *Caldwell, supra;* Clark, *Suretyship in the*

*Uniform Commercial Code,* 46 Tex.L.Rev. 453, 454 (1968). Accordingly, the principles stated in those cases are applicable to the note signed in 1977, and to the implied promise to pay contribution, which issues are now before this Court.

■ Moreover, under both the Texas Business and Commerce Code and the common law, the liability of all parties is discharged when any party, who has no right of action or recourse on the instrument, re-acquires the instrument in his own right or is discharged by his payment of the entire debt. Tex.Bus. & Com.Code sec. 3.601(b) and (c) (Vernon Supp.1984). The principle is that all parties to an instrument are discharged when no party is left with rights against any other party on the instrument. *Charles, supra;* Tex.Bus. & Com.Code sec. 3.601(c), *see* Comment par. 3. In the instant case, appellee has no rights against any party other than the appellant, who as co-maker is impliedly liable for a *pro rata* contribution in "assumpsit."[1] Since this is not an action on the instrument, the liability of both the appellant and the appellee on the note was discharged when appellee acquired the note in his own right by his payment of the debt. *Charles, supra; Moore v. Lindsey,* 662 F.2d 354 (5th Cir.1981).

■ We do not find the bank's transfer to appellee to be invalid, but only that all liabilities on the note were discharged by law when appellee, a co-maker, paid the entire debt and re-acquired the note. When the bank transferred all of its interests, rights, and title in the note to appellee, appellee became the holder of a note on which the liabilities of all parties had been discharged, and with notice of appellant's prior cross-action alleging fraudulent inducement.

■ Appellee did not acquire the bank's "holder in due course" status because the appellee, as co-maker, was entitled only to a pro-rata contribution from appellant to

---

1. "Assumpsit" is the recovery for the unjust retention of a benefit to the loss of another, or the retention of money of another against the fundamental principles of justice and equity. *King v. Tubb,* 551 S.W.2d 436 (Tex.Civ.App.—Corpus Christi 1977, no writ).

the extent of his promise to pay. A true "holder in due course" would take the instrument free from all claims and defenses against the note by any person with whom the holder has not dealt. *See* Tex.Bus. & Com.Code sec. 3.305; *Williams v. Stansbury,* 649 S.W.2d 293 (Tex.1983).

■ Consequently, we hold that evidence of the oral agreement which induced appellant to sign the written note was properly before the trial court, and that such agreement was enforceable against appellee in his action in assumpsit for contribution.

In the instant case, the jury's responses to special issues one and three indicate that appellant's "implied promise to pay contribution to his co-makers" was expressly conditioned upon the unavailability of campaign funds to retire the debt. In fact, the jury found that appellee's promise to use half of the campaign funds to pay the debt induced appellant to sign the note and must have also induced appellant's "implied promise" to pay contribution.

■ Since appellant established the existence of an express agreement which was part of the true or additional consideration for the written agreement and the implied promise to pay, the trial court erred in not enforcing the agreement and in not denying appellee's claim for contribution. *Cf. Sherrod v. Barley, supra; Leyendecker v. Strange, supra; Smith v. Pulliam, supra.*

We reverse the trial court's judgment awarding appellee $10,000 as contribution, and therefore find it unnecessary to address appellee's cross-points on the sufficiency of the evidence supporting the jury's finding on attorney's fees. The judgment of the trial court awarding appellee $10,000 is reversed, and judgment is rendered that appellee take nothing against appellant.