**Affirmed in Part and Reversed and Rendered in Part and Opinion filed May 1, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-10-00905-CV
NO. 14-10-00940-CV

**JAMES PITTMAN MCGEHEE AND JULES H. BOHNN, M.D., Appellants**

**V.**

**KERRY CARL HAGAN AND KERRY CARL HAGAN, P.C., Appellees**

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-24180**

# O P I N I O N

Kerry Carl Hagan and Kerry Carl Hagan, P.C. ("Hagan P.C.") sued James Pittman McGehee and Jules H. Bohnn, M.D. for damages allegedly caused by McGehee's repudiation of an office lease. The trial court rendered judgment in favor of Hagan and Hagan P.C. In several issues, McGehee and Bohnn challenge certain portions of the trial court's judgment. We reverse and render a take-nothing judgment in favor of McGehee and Bohnn.

# I. BACKGROUND

Bohnn owned a building named "Broadacres Center." McGehee is an Episcopal priest and therapist who began leasing office space at Broadacres Center in 1993. McGehee and Bohnn entered into a lease agreement which included a provision for automatic renewal of the lease every year unless a party provided written notice of termination. The litigants dispute whether this lease remained in effect at the time of appellants' alleged wrongful acts.

During the early 1990s, when he was a law student in Houston, Hagan met McGehee, who was serving as dean of Christ Church Cathedral. After practicing law for several years, Hagan decided to become a therapist and earned degrees in theology and psychology. McGehee then invited Hagan to practice at Broadacres Center. In September 1999, Hagan began his therapy practice and operated Hagan P.C. at Broadacres Center. Neither Hagan nor Hagan P.C. ever entered into a written lease with Bohnn or McGehee.

During spring 2006, Hagan and McGehee decided to leave Broadacres Center. They discussed leasing office space with John Hansen Investment Builders ("Hansen"). On April 5, 2006, Hagan P.C. and McGehee, as co-lessees, entered into a commercial lease (the "2006 Joint Lease") with 4119 Montrose Limited ("Lessor").[1] Under the 2006 Joint Lease, Hagan P.C. and McGehee agreed to occupy an office in the Montrose area of Houston ("Montrose Office Space") for $2,450 per month. Hagan P.C. and McGehee each provided Lessor with a security deposit. The parties contemplated that the leased space would be ready for occupancy by January 1, 2007.

During summer 2006, Hagan was recovering from surgery. Bohnn spoke with Hagan about sharing his office space at Broadacres Center with another therapist. Hagan

---

[1] Hagan individually was not a party to the 2006 Joint Lease; John Hansen signed the 2006 Joint Lease on behalf of Lessor.

declined and decided to vacate Broadacres Center before the Montrose Office Space was completed.  McGehee remained at Broadacres Center.

In April 2007, the Montrose Office Space was still not ready for occupancy.  At that time, McGehee informed Bohnn of McGehee's intent to leave Broadacres Center and move to less expensive office space.  Bohnn responded that he wanted McGehee to stay, and McGehee agreed to meet with Bohnn's financial advisor.  McGehee informed Hagan about this meeting and requested a copy of the 2006 Joint Lease.  According to Hagan, McGehee explained he remained committed to the 2006 Joint Lease but wanted to use the lease as a negotiation tool with Bohnn.  Ultimately, McGehee decided to remain at Broadacres Center after Bohnn substantially lowered McGehee's rent.

McGehee informed Hagan regarding his decision to remain at Broadacres Center.  Hagan testified that McGehee stated, "I can walk the lease and Hansen's not going to sue me."  McGehee also said he would inform Hansen he was "backing out" because "the delay in construction has caused me to make another choice."  According to Hagan, he "never consented to [McGehee's] breach [and] never consented to Bohnn's communications with [McGehee]."

McGehee told Hansen that he planned to remain at Broadacres Center and was "very frustrated" by Hansen's delay in completing the Montrose Office Space.  At McGehee's request, Hansen returned McGehee's security deposit.  McGehee testified he does not possess documentation establishing that Hansen released McGehee from liability on the 2006 Joint Lease.  According to Hagan, McGehee informed Hagan, "Hansen did not void the contract . . . , but [I don't] believe that they w[ill] sue [me]. . . . I think it will just die down and fade away."  Thereafter, Hagan P.C. entered into a new lease with the Lessor (the "2007 Hagan P.C. Lease").  Hagan testified he has not received any demands for past-due rent under the 2006 Joint Lease.

Hagan and Hagan P.C. sued McGehee and Bohnn.[2]  Hagan P.C. asserted a breach-

---

[2] We discuss only those claims and parties relevant to this appeal.

3

of-contract claim against McGehee and a tortious-interference claim against Bohnn. Hagan P.C. sought (1) benefit-of-the-bargain damages for the difference in value between the office leased under the 2007 Hagan P.C. Lease and the office leased under the 2006 Joint Lease and (2) damages Hagan P.C. would sustain if Lessor demands past-due rent from Hagan P.C. under the unreleased 2006 Joint Lease.

Following a bench trial, the trial court found in favor of Hagan P.C. on its breach-of-contract and tortious-interference claims. In its judgment, the trial court ordered McGehee and Bohnn are jointly and severally liable for $158,128.23 in damages.[3] McGehee and Bohnn filed separate appeals, which we consolidated.

## II. McGEHEE'S APPEAL

We begin by considering the issues raised by McGehee. In his first issue, McGehee contends the trial court erred by determining he breached the 2006 Joint Lease. Among other contentions, McGehee argues the evidence is legally insufficient to support the trial court's finding that McGehee owed a contractual duty to Hagan P.C. To prove breach of contract, the plaintiff must establish that the defendant owed a contractual duty to the plaintiff. *See Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. filed).

When examining a legal sufficiency challenge, we review evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* There is "no evidence" or legally insufficient evidence when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence

---

[3] Specifically, the trial court found that appellants owed Hagan P.C. $11,102.23 in benefit-of-the-bargain damages, $136,793.00 in damages for unreleased obligations under the 2006 Joint Lease, and $10,233.00 in pre-judgment interest.

4

from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. The fact finder is the sole judge of witness credibility and the weight to give testimony. *Id.* at 819.

In its live petition, Hagan P.C. pleaded that McGehee owed a contractual duty to Hagan P.C. under the 2006 Joint Lease; Hagan P.C. neither alleged nor presented evidence supporting a finding that McGehee breached any other agreement. The parties agree that under the 2006 Joint Lease, McGehee and Hagan P.C. were co-lessees who owed contractual duties to Lessor. McGehee and Hagan P.C. bore a joint obligation to pay Lessor $2,450.00 per month in rent, meaning McGehee and Hagan P.C. were each individually liable to Lessor for the full amount of rent each month.[4] There is no language in the lease providing that McGehee and Hagan P.C. owed each other any contractual duties. Nevertheless, Hagan P.C. argues that McGehee owed contractual duties to Hagan P.C. simply because they were co-lessees. McGehee contends co-lessees do not inherently owe each other contractual duties.

In support of his argument, McGehee cites *Charles v. Charles*, 478 S.W.2d 133 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.). In *Charles*, Maurice and Billie Ruth were co-obligors on a promissory note for $3,500. *Id.* at 135. After she paid the note in full, Billie Ruth sued Maurice, seeking repayment for his portion of the debt. *Id.*[5] The trial court rendered judgment in favor of Billie Ruth. *Id.*

The court of appeals considered whether Billie Ruth's claim was subject to a two or four-year statute of limitations. During its analysis, the court explained,

---

[4] *See Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 891 (Tex. App.—Dallas 2004, pet. denied) ("If a contract imposes joint liability on several parties then all joint obligors are bound for the whole performance of the contract."); *Baum v. McAfee*, 125 S.W. 984, 987 (Dallas 1910, no writ) ("Where two or more make a joint promise, each is liable to the promisee for the whole debt or liability.").

[5] On the reverse side of the note there was a separate agreement between Maurice and Billie Ruth, indicating that Maurice was responsible for "1550.00" of the note. *Charles*, 478 S.W.2d at 135. However, the court of appeals concluded this agreement was unenforceable. *Id.* at 135–36.

> [Maurice] was of course liable to the bank for the full amount of the $3,500 note, but his obligation to [Billie Ruth] is not founded upon that note because when [Billie Ruth] paid it the note was discharged. [Billie Ruth's] right of action is founded, not upon the note, but upon [Maurice's] implied promise to reimburse her for his share of their joint and several liability to the bank. This right of action arises out of the relationship of the parties rather than the written contract and is barred by the two year statute.

*Id.* at 135–36; *see also, e.g.*, *Siegler v. Ginther*, 680 S.W.2d 886, 890 (Tex. App.—Houston [1st Dist.] 1984, no writ) (applying *Charles*); *Miller v. Miles*, 400 S.W.2d 4, 7 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.) (recognizing contribution stems from an implied promise, not the underlying debt).

We acknowledge that these cases are not perfectly analogous to our situation. However, to the extent *Charles* and similar cases support the proposition that co-obligors to a note do not inherently owe each other duties arising from the note, we agree similar reasoning should apply in the present case. Under the 2006 Joint Lease, McGehee and Hagan P.C. made promises to Lessor, not each other.[6] Under the 2006 Joint Lease, McGehee did not promise Hagan P.C. that he would refrain from repudiating the lease.[7] We conclude the evidence is legally insufficient to support the trial court's finding that McGehee owed a contractual duty to Hagan P.C. under the 2006 Joint Lease. Consequently, the trial court erred by awarding Hagan P.C. benefit-of-the-bargain damages[8] and damages for unreleased obligations under the 2006 Joint Lease against

---

[6] The authorities cited by Hagan P.C. do not support a conclusion that co-obligors inherently owe contractual duties to each other under the contract. *See Stark v. Benckenstein*, 156 S.W.3d 112, 117 (Tex. App.—Beaumont 2004, pet. denied) (expressing generally, "In a contractual relationship, any party may breach the contract, and, thus, any party may sue for the breach and seek a judicial determination of contractual rights," but not considering whether co-obligors owe contractual duties to each other); *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 694–95 (Tex. App.—Tyler 1990, writ denied) (holding title company which agreed to close sale on several lots owed tort duty to agent who, as agreed in the real estate contract, was to receive one of the lots as his commission).

[7] Although McGehee and Hagan P.C. both agreed to bear individual responsibility to Lessor for the full amount of rent, there were countless ways they could have agreed to apportion rent between themselves. However, Hagan P.C. did not allege McGehee breached, or Bohnn tortiously interfered with, a separate agreement, oral or written, between McGehee and Hagan P.C.

[8] Hagan argues that the 2006 Joint Lease became prohibitively expensive for Hagan P.C. after McGehee repudiated, necessitating Hagan P.C. to locate and lease less attractive office space. However,

6

McGehee.  We sustain McGehee's first issue.

The parties agree that Hagan P.C. did not request equitable contribution from McGehee for unreleased obligations under the 2006 Joint Lease.  However, even assuming the trial court's award of damages for unreleased lease obligations was based on a theory of equitable contribution instead of on breach of express contract, we conclude Hagan P.C. was not entitled to such award.

Under the equitable theory of contribution, when two or more co-obligors share a common obligation, a co-obligor who makes compulsory payment of more than its fair share of the common obligation may seek contribution from the other co-obligors.  *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007) (explaining equitable contribution in the insurance context); *Lavender v. Bunch*, 216 S.W.3d 548, 553 (Tex. App.—Texarkana 2007, no pet.).  As part of his second issue, McGehee argues that Hagan P.C. did not establish entitlement to contribution because it is undisputed Hagan P.C. has never made any rental payment to, or received any demands for payment from, Lessor under the 2006 Joint Lease.  Again, we agree.

"[T]he general rule is that there can be no recovery of contribution until after payment by the party seeking contribution."  *Patterson v. Fuller*, 110 S.W.2d 1230, 1232 (Tex. Civ. App.—Eastland 1937, writ dism'd); *see also Stephenson v. Luttrell*, 107 Tex. 320, 324, 179 S.W. 260, 262 (1915) ("[I]t is equitable that [tenant] incurring the expense [for improvement of property] shall have contribution from his cotenant . . . ; but there is no principle of equity that will permit him to speculate on the transaction, and require his cotenant to return to him any greater sum than his proportion of the money *actually expended*." (emphasis added)); *Nelms v. Chazanow*, 404 S.W.2d 359, 362 (Tex.

---

the purpose of benefit-of-the-bargain damages is restoration of the injured party to the economic position it would have achieved had the contract been fully performed.  *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 344 S.W.3d 514, 522 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Because McGehee and Hagan P.C. were both fully responsible for paying rent under the 2006 Joint Lease, McGehee's alleged repudiation did not prevent Hagan P.C. from enjoying the benefit of its bargain under the 2006 Joint Lease, i.e., Hagan P.C. agreed to pay Lessor the full amount of rent in exchange for the use of certain office space, and this bargain remained unaffected by McGehee's repudiation.

Civ. App.—Houston [1st Dist] 1966, no writ) ("The law is well settled in this State that each joint obligor in a contract is liable to the other for contribution to indemnify him for any payments made in excess of his prorata share."). Thus, even if we assume McGehee and Hagan P.C. remain liable for unpaid rent under the 2006 Joint Lease, Hagan P.C. has not asserted a claim for contribution or established that it is entitled to contribution from McGehee. We sustain McGehee's second issue and next address the issues raised by Bohnn.

### III. BOHNN'S APPEAL

In his third issue, Bohnn contends the evidence is legally insufficient to support the trial court's finding that Bohnn tortiously interfered with the 2006 Joint Lease.

The elements of tortious interference with a contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). To prevail on a tortious-interference claim, a plaintiff must present evidence that the defendant interfered with a specific contract. *See Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex. App.—Eastland 2002, pet. denied).

Bohnn argues, *inter alia*, no evidence supports a finding that he tortiously interfered with Hagan P.C.'s rights under the 2006 Joint Lease because there is no evidence McGehee and Hagan P.C. owed each other any contractual duties under the lease. Bohnn notes that, under the 2006 Joint Lease, McGehee and Hagan P.C. owed duties to—and were owed duties by—Lessor, but there was no provision indicating McGehee owed money or any other type of performance to Hagan P.C. We construe Bohnn's contention to include an argument that he did not tortiously interfere with Hagan P.C.'s ability to perform under the 2006 Joint Lease by inducing McGehee to repudiate the lease because McGehee's repudiation affected only rights owed to Lessor, not rights owed to Hagan P.C.

8

Regardless of whether McGehee performed under the 2006 Joint Lease, Hagan P.C. was responsible for paying Lessor the entire amount of rent each month. Thus, even if Bohnn induced McGehee to breach the 2006 Joint Lease, such act did not interfere with Hagan P.C.'s rights and obligations *under the 2006 Joint Lease*. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998) (concluding defendant did not commit tortious interference because there was no evidence defendant interfered with plaintiff's ability to enforce its rights under the contract). We hold that the evidence is legally insufficient to support a tortious-interference finding under the theory pleaded in this case. Accordingly, the trial court erred by concluding Bohnn committed tortious interference and awarding Hagan P.C. damages against Bohnn. We sustain Bohnn's third issue.

## IV. CONCLUSION

We reverse that portion of the trial court's judgment awarding Hagan P.C. $158,128.23 in damages against McGehee and Bohnn, jointly and severally, and render judgment that Hagan P.C. take nothing on its claims for breach of contract and tortious interference. We affirm the remainder of the judgment.


/s/    Charles W. Seymore
Justice


Panel consists of Justices Frost, Seymore, and Jamison.

9